## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**CHARLES FINNEY,**

      **Petitioner,**

**v.**                               **Case No. 8:02-CV-2217-T-30TBM**
                                               **Death Penalty Case**

**JAMES McDONOUGH,[1]**

      **Respondent.**

_____/

## ORDER

This case is before the Court for consideration of a Petition for Writ of Habeas Corpus (Dkt. 1) brought pursuant to 28 U.S.C. § 2254 by Charles Finney, a Florida inmate who has been sentenced to death. The issues have been fully briefed and the case is ready for decision.

No evidentiary hearing is necessary because the record is fully developed and the claims of the petition raise issues of law, not issues of fact. *See Breedlove v. Moore*, 279 F.3d 952, 959 (11th Cir. 2002). For reasons set forth below, the Court finds that all of Finney's claims lack merit. The petition will be denied in its entirety.

### Background

At or about 2:00 p.m. on January 16, 1991, the victim, Sandra Sutherland, was found lying crosswise on her bed, bound, gagged and stabbed to death. Her bedroom had been ransacked, a jewelry box was missing, and the contents of her purse had been dumped and strewn over the floor. The other rooms of the apartment appeared to be in

---

[1]James McDonough, the current Secretary of the Florida Department of Corrections, is substituted as the proper party respondent for James V. Crosby, Jr., pursuant to Rule 25(d) of the Federal Rules of Civil Procedure

order, although a shelf underneath the television in the living room had an outline of dust on it and loose wires indicated that a VCR had recently been removed from the shelf, and the victim's cordless phone was inoperable.

Two weeks later, Finney was identified as a suspect in the Sutherland homicide when a review of recent pawn shop slips revealed that he pawned the victim's VCR for $30.00 less than 30 minutes before her body was found. When interviewed by Tampa Police Detective Randy Bell on January 30, 1991, Finney indicated that he knew the victim because they had lived next to each other for several months (Dkt. 28, Ex. A4, Vol. IV at Tr. 413). He stated that the victim had moved into a different apartment about eight months earlier, and he had only seen her twice since then (Dkt. 28, Ex. A4, Vol. IV at Tr. 413). Once, he had talked with her about putting a screened porch on the back of her new apartment, and about two months prior to the murder, he saw her near the mailboxes at the complex and talked with her about a trip she had taken to Germany.

Initially, Finney told Detective Bell that he had called in sick the morning of January 16. Finney stated that about 10:30 some maintenance people came to his apartment to repair holes in the wall. After they left, Finney stayed inside all day, by himself, watching television until about 4:30 to 5:15 p.m., when his girlfriend returned with the car. When confronted with the fact that Detective Bell knew he had pawned the victim's VCR that afternoon, Finney said that he had found the VCR in a green duffle bag near the dumpsters when he took the garbage out. Finney told Detective Bell that he took the VCR to his apartment and examined it. After deciding he did not need the VCR, he put it in his car and drove to the pawn shop.

On February 13, 1991, Finney was indicted for first-degree murder, robbery, sexual battery, and trafficking in stolen property. Represented by court-appointed special public

-2-

defenders, Finney proceeded to a trial by jury on September 14, 1992.   The sexual battery charge was nolle prossed before jury selection began. The jury returned verdicts of guilty on all three counts. On September 18, 1992, the jury, by a vote of 9-3, recommended the death penalty.

During the sentencing hearing on November 10, 1992, the trial court found three aggravating factors: (1) Finney previously had been convicted of a violent felony; (2) the murder was committed for pecuniary gain; and (3) the murder was especially heinous, atrocious or cruel;[2] and five nonstatutory mitigating factors: (1) Finney's contributions to the community as evidenced by his work and military history; (2) Finney's positive character traits; (3) Finney would adjust well to a prison setting and had potential for rehabilitation; (4) Finney had a deprived childhood; and (5) Finney was bonded with and loved  his daughter.[3] The trial judge imposed a death sentence for the murder conviction, a sentence of life imprisonment for the armed robbery conviction, and a 15-year sentence for the conviction of dealing in stolen property.

On direct appeal, Finney raised the following issues: (1) there was insufficient evidence to support his convictions and the finding of the pecuniary gain aggravator; (2) the trial court erred in excluding the proffered testimony of Dr. Diggs that the murder scene was consistent with a consensual sexual bondage situation; (3) the trial court erred in denying defense counsel's request that Finney's shackles be removed during the penalty phase; (4) the trial court erred in allowing the Judy Baker, the victim of the prior violent

---

[2] Fla. Stat. § 921.141(5)(b), (f), (h) (1991).

[3] Under Florida law, three factual determinations must be made before a defendant is eligible for a death sentence: the existence of at least one aggravating circumstance; sufficient aggravating circumstances exist to justify imposition of the death penalty, and "there are insufficient mitigating circumstances to outweigh the aggravating circumstances."  Fla. Stat. § 921.141(1)-(3). Fla. Stat. § 921.141(3).

felony convictions, to testify as to the circumstances of that crime; (5) the trial court erred in prohibiting cross-examination of Mrs. Baker regarding her description of her attacker; (6) the trial court erred in denying the request for individual jury instructions on the specific nonstatutory mitigating factors urged by trial counsel; and (7) the trial court erred in instructing on and finding the three aggravating factors and in imposing the death penalty. Finney's convictions and sentences were affirmed on January 20, 1995, and his motion for rehearing was denied on September 18, 1995. *See Finney v. State*, 660 So. 2d 674 (Fla. 1995). Finney challenged the state court's finding that his claim of improper shackling was procedurally barred in a petition for certiorari review in the United States Supreme Court. The petition was denied on January 22, 1996. *See Finney v. State*, 516 U.S. 1096 (1996).

The Office of Capital Collateral Counsel was appointed to represent Finney. When the agency split into three separate agencies, Finney's case was transferred to the Capital Collateral Regional Counsel - Middle Region ("CCRC-M"). To toll the one-year limitation period applicable to petitions for federal habeas relief, CCRC-M filed a "shell" motion to vacate Finney's convictions in state court pursuant to Fla. R. Crim. P. 3.850 on March 31, 1997 (Dkt. 28, Ex. C1 at PC-R. 20). In the amended Rule 3.850 motion filed April 16, 1999, Finney raised the following issues: (1) trial counsel was ineffective at the guilt and penalty phases of trial; (2) the jury instructions were unconstitutional; (3) newly-discovered DNA evidence showed that the convictions and sentences were unreliable; (4) Finney's death sentence rests on an automatic aggravating factor; and (4) Florida's capital sentencing scheme is unconstitutional. Following a *Huff* [4] hearing held on May 26, 1999,

_____

[4]*See Huff v. State*, 622 So.2d 982, 983-84 (Fla. 1993) (finding that the petitioner was "denied due process of law because the [trial] court did not give him a reasonable opportunity to be heard," the court held that the trial court judge "must allow the attorneys the opportunity to appear before the court and be heard

the trial court entered an order granting an evidentiary hearing on the issue of "DNA comparison of hair samples and semen stains taken from the crime scene with that of Mr. Kunkel [sic], and dependent on said testing, any related issues regarding said test results" (Dkt. 28, Ex. C2, Vol. 2 at PC-R. 190). When post-conviction counsel received new DNA results relating to those specimens, he declined to proceed with that claim.

On May 4, 2000, the trial court denied Finney's Rule 3.850 motion. In his appellate brief, Finney raised the following issues:  (1) the trial court erred in summarily denying Finney's rule 3.850 claims; (2) the trial court erred in summarily denying Finney's claim that trial counsel was ineffective in failing to object to certain prosecutorial comments; (3) the trial court erred in summarily denying Finney's claim that trial counsel was ineffective in failing to adequately question prospective jurors; (4) the trial court erred in summarily denying Finney's claim that trial counsel was ineffective in failing to object to the excusal of certain jurors; (5) the trial court erred in summarily denying Finney's claim that trial counsel was ineffective in failing to present additional mitigating evidence; (6) the trial court erred in summarily denying Finney's claim that trial counsel was ineffective in failing to provide the defense mental health expert with adequate background information; (7) the trial court erred in summarily denying Finney's claim that trial counsel was ineffective in failing to retain an expert to testify concerning the crime scene; (8) the trial court erred in failing to ensure that postconviction counsel rendered effective performance; (9) Florida's capital sentencing scheme is unconstitutional; (10) Finney's trial was fraught with error; (11) Finney is innocent of the death penalty. Dkt. 28, Ex. C6.

---

on an initial 3.850 motion ···· to determine whether an evidentiary hearing is required and to hear legal argument relating to the motion.").

On February 19, 2001, while his Rule 3.850 appeal was pending, Finney filed a petition for state habeas relief asserting the following claims: (1) appellate counsel was ineffective in failing to raise the issue of the admissibility of victim photographs; (2) appellate counsel was ineffective in failing to raise the issue of the victim's mother being present in the courtroom; (3) appellate counsel was ineffective in failing to raise the issue of the trial court's failure to rule on the defendant's motion for sequestration; (4) appellate counsel was ineffective in failing to raise the issue of the excusal of two jurors for cause; (5) appellate counsel was ineffective in failing to raise the issue of the trial court's failure to instruct the jury to disregard certain comments by the prosecutor; (6) Finney may be incompetent at the time of execution; (7) Florida's Death Penalty Reform Act of 2000 is unconstitutional; and (8) execution by lethal injection is unconstitutional. The Florida Supreme Court addressed the appeal of the trial court's decision denying Finney's Rule 3.850 motion and the state habeas petition in one order entered on September 26, 2002. *Finney v. State*, 831 So.2d 651 (Fla. 2002).   Finney filed *pro se* a motion for rehearing which was denied as unauthorized, and the mandate issued on December 23, 2002.

On December 4, 2002, CCRC-M Attorney James Viggiano, Jr., filed a motion in this Court requesting that it determine whether a conflict of interest existed between Finney and the office of the CCRC-M, stating:

> Petitioner Finney refuses to speak, meet, or otherwise communicate with Attorneys Kiley, Viggiano, or any other attorney employed with CCRC-M. Attorneys Kiley and Viggiano attempted to meet with Petitioner Finney on two occasions and he has refused to meet.  Attorney Viggiano has sent two letters to Petitioner Finney and he has not responded.  Attorney Viggiano has arranged a telephonic conference with Petitioner Finney and he has refused to come to the telephone.

Dkt. 1 at 4. Finney's complaint was based on his belief that additional guilt phase issues were abandoned by the CCRC-M after the attorney initially assigned to handle his case left the CCRC-M's employee.

On December 23, 2003, Attorney Pamela Izakowitz filed a request for pre-petition appointment to represent Finney. *See McFarland v. Scott*, 512 U.S. 849, 857 (1994). Attorney Izakowitz was appointed as counsel of record for Finney on February 14, 2003, and instructed to file a notice with the Court whether she would adopt the § 2254 petition submitted on Finney's behalf, but without his signature, *see* 28 U.S.C. § 2242 (2003), by the CCRC-M on January 14, 2003. On February 23, 2003, Attorney Izakowitz advised the Court that she would file an amended § 2254 petition and an acknowledgment by Finney that he agreed to her choice of action. Finney's notice of consent was filed on March 4, 2003.

On July 7, 2003, Finney filed a motion for post-conviction relief pursuant to Fla. R. Crim. P. 3.850 asserting two claims for relief: (1) the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose: (a) a letter which the victim had written a few days before her death that allegedly demonstrates that she was involved in a romantic relationship at the time; (b) information that Alice Rabidue had stolen something from the victim; and (c) a note in the prosecutor's file that the medical examiner, Dr. Diggs, would "go along with FDLE" in some undisclosed manner; and (2) his initial post-conviction attorney, Mr. Jack Crooks, violated Finney's constitutional rights by failing to disclose a conflict of interest arising from his employment as an assistant state attorney in Hillsborough County during Finney's criminal proceedings. *See* Dkt. 38, Ex. E1. After conducting a *Huff* hearing on October 8, 2003, the trial court denied the Rule 3.850 motion, finding that both of the claims were procedurally barred (Dkt. 38, Ex. E1, Vol. 1 at

PC-R. 464- 470). Finney's motion for rehearing was denied (Dkt. 38, Ex. E1, Vol. 1 at PC-R. 462-463). A timely notice of appeal was filed (Dkt. 38, Ex. E1, Vol. 1 at PC-R. at 471), and the trial court's decision was affirmed without written opinion on May 6, 2005. *See Finney v. State*, 907 So.2d 1170 (Fla. 2005) (table decision).

Finney's amended § 2254 petition (Dkt. 23) was filed on July 23, 2003, shortly after he filed his second Rule 3.850 motion in state court. Since an amended pleading supersedes and replaces the original pleading unless the amendment specifically refers to or adopts the earlier pleading, *see Cedillo v. Standard Oil Co. of Tex.*, 261 F.2d 443 (5th Cir. 1958), the only claims before the Court are the ones asserted in the amended petition (Dkt. 23).

In his amended § 2254 petition, Finney asserts 10 claims of constitutional violations, several of which contain numerous sub-parts. On July 5, 2005, the State filed its response to each of Finney's claims (Dkt. 28). Respondent acknowledges that the petition is timely but argues that the petition should be denied because Finney has failed to make the showing necessary for relief under 28 U.S.C. §§ 2254(d)-(e). Having reviewed the record, the parties arguments, applicable statutes, and controlling case law, the Court finds that, for reasons set forth *infra*, Finney has failed to establish that he is entitled to federal habeas relief.

**Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), signed into law on April 24, 1996, amended the statutes governing federal habeas relief for state prisoners. Although Finney was convicted in 1992, because he filed his petition after April 24, 1996, the AEDPA provisions are applicable thereto. *See Wilcox v. Florida Dep't of Corrections*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000). As

amended, § 2254 permits a prisoner in state custody to petition a federal court for a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Where a state court initially considers the issues raised in the petition and enters a decision on the merits, 28 U.S.C. § 2254(d), added by the AEDPA, governs the review of those claims. *See Mobley v. Head*, 267 F.3d 1312, 1316 (11th Cir. 2001).

Under 28 U.S.C. § 2254(d) and (e), this Court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001). Similarly, the state courts' resolutions of issues of law – including constitutional issues – must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involve an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). It is not enough "that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." *Id. See also Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

Moreover, in order for a court to consider claims brought in a federal habeas petition they must first be fully exhausted in state court. 28 U.S.C. § 2254(b)(1); *Kelley v. Sec'y for Dep't Of Corrs.*, 377 F.3d 1317, 1343 (11th Cir. 2004). In order to be exhausted, a federal claim must be fairly presented to the state courts. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). *See also Henderson v. Campbell*, 353 F.3d at 891 ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)); *Snowden v. Singletary*, 135 F.3d 732, 735 (11th

Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).

"'[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process, including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845). This is required even if the state supreme court rarely grants such petitions and usually answers only questions of broad significance. *O'Sullivan*, 526 U.S. at 845-46.

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Id.* at 1138. A procedural default will only be excused in two narrow circumstances. First, petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the default. "Cause" ordinarily requires petitioner to demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court. *Henderson v. Campbell*, 353 F.3d at 892; *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995). To show "'prejudice," a petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to

his factual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Hollis v. Davis*, 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982). A petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson v. Campbell*, 353 F.3d at 892.

Second, a petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if such review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Henderson v. Campbell*, 353 F.3d at 892. This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Id.* The fundamental miscarriage of justice exception concerns a petitioner's "actual" innocence rather than his "legal" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001) (citing *Calderon v. Thompson*, 523 U.S. 538, 559 (1998)); *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986) (explaining that a "fundamental miscarriage of justice" occurs "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent")). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). The petitioner must show constitutional error coupled with "new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Id.* at 324.

Finally, this Court cannot presume that a Florida court ignores its own procedural rules when the Court issues only a one-sentence denial of relief, which is essentially a

summary dismissal.  Such a ruling does not suggest that the state court resolved the issue on the federal claim presented. *See Coleman v. Thompson*, 501 U.S. 722, 735-36 (1991); *Kight v. Singletary*, 50 F.3d 1539, 1544-1545 (11th Cir. 1995) (applying procedural bar where state court's summary dismissal did not explain basis for ruling); *Tower v. Phillips*, 7 F.3d 206, 209 (11th Cir. 1993) (applying bar where state court did not rule on claims presented).

**GROUND ONE**

Finney's first claim for relief concerns alleged violations of his constitutional rights by post-conviction counsel. This claim fails to assert an issue reviewable in a federal habeas proceeding. In *Coleman v. Thompson*, a majority of the Supreme Court concluded that there is no right to counsel in state collateral proceedings. 501 U.S. at 755.  Likewise, in *Spradley v. Dugger*, the Eleventh Circuit held that where a petitioner's claim goes to issues unrelated to the cause of the petitioner's detention, that claim does not state a basis for habeas relief.  825 F.2d 1566, 1568 (11th Cir. 1987) (involving claims of errors at a hearing on the petitioner's 3.850 motion). With regard to federal habeas relief, 28 U.S.C. § 2254(i) forecloses this argument, providing that "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." The Florida Supreme Court has likewise held that Florida's statutory right to counsel does not encompass Sixth Amendment protections. *See Durocher v. Singletary*, 623 So. 2d 482, 483 (Fla. 1993) (in discussing the statutory right to collateral counsel, the court held that the statute "did not add anything to the substantive state-law or constitutional rights" of capital defendants) (citing *Troedel v. State*, 479 So. 2d 736, 737 (Fla. 1985)).  This claim is therefore denied.

**GROUND TWO**

The theory of Finney's defense was that "the case was not a murder in the course of a robbery, but a sexual homicide committed by someone who knew the victim" (Dkt. 23 at 43). In Ground Two, Finney contends that his Sixth Amendment right to present testimony in support of this theory was abridged when the trial court excluded the proffered testimony of the medical examiner, Dr. Diggs, that the murder scene was consistent with consensual sexual bondage.[5] After extensive questioning, the trial court concluded that because Dr. Diggs could only speculate about whether the scene was consistent with a bondage murder, his testimony on that subject would be misleading for the jury.[6]

Finney raised this claim on direct appeal. In rejecting the claim, the Florida Supreme Court found as follows:

> Next, we turn to Finney's second claim that the trial court erred in refusing to allow the medical examiner to testify concerning consensual bondage. The defense sought to offer Dr. Diggs' testimony that the murder scene was consistent with both a consensual sexual bondage situation and a situation where the victim submitted to being bound and gagged out of fear. The court

---

[5]In support of this claim, Finney cites to *Washington v. Texas*, 388 U.S. 14, 18-19 (1967) ("The right to offer the testimony of witnesses . . . is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. . . . This right is a fundamental element of due process of law"). In *Washington,* the witness that the defendant wished to call was prevented from testifying by state law because he had been convicted as a participant in the same crime. *Id.* at 16-17. The justification for a rule that prevented co-defendants from testifying at each other's trials was that "each would try to swear the other out of the charge." *Id.* at 21 (internal quotations omitted). *Washington v. Texas* does not hold that a defendant has the right to present any and all witnesses. The Supreme Court addressed the limits of a defendant's right to call witnesses and held that a state cannot create "arbitrary rules that prevent whole *categories* of defense witnesses from testifying on the basis of *a priori* categories that presume them unworthy of belief." *Id.* at 22 (emphasis added). Here, the trial court did not prevent Finney from calling an entire category of possible witnesses, e.g., medical examiners. It merely prevented Finney from eliciting testimony based on pure speculation. *Washington* is, therefore, not on point.

[6]"If scientific, technical, or other specialized knowledge will assist the trier of fact in understanding the evidence or in determining a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify about it in the form of an opinion; however, the opinion is admissible only if it can be applied to evidence at trial." Fla. Stat. 90.702. *See also* Fed. R. Evid. 702.

allowed Dr. Diggs to testify concerning the probable positions of the victim and the killer and the lack of defensive wounds. However, the court excluded the proffered testimony concerning sexual bondage, determining that such testimony would be "speculation," "would not be expert opinion," and would be "misleading."

A trial court has broad discretion in determining the range of subjects on which an expert witness can testify, and, absent a clear showing of error, the court's ruling on such matters will be upheld. *Burns v. State*, 609 So.2d 600, 603 (Fla. 1992). We find no abuse of discretion here.

During proffer, Dr. Diggs testified that when he sees this type of restraint situation two possibilities come to mind: 1) that the victim submitted to being bound and gagged out of fear or 2) that some sort of consensual bondage situation occurred. However, when questioned by the court, Dr. Diggs stated that he could testify as to the probable positions of the victim and the perpetrator and as to whether there were defensive wounds, but he could not testify as to whether a bondage situation might have been consensual or forced. According to Dr. Diggs, such matters are beyond a medical examiner's expertise. Dr. Diggs later told the court that it would not be expert opinion, but rather "total speculation" for him to testify concerning whether the scene was consistent with either scenario. The record clearly supports the trial court's ruling.

*Finney v. State*, 660 So.2d 674, 682 (Fla. 1995). The Florida Supreme Court's decision accurately reflects the record (Dkt. 28, Ex. A4, Vol. IV at Tr. 476-79).

On habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). Federal courts possess only limited authority to consider state evidentiary rulings in habeas corpus proceedings. *Burgett v. Texas*, 389 U.S. 109, 113-114 (1967). Even when a petition that actually involves state law issues is "couched in terms of equal protection and due process," this limitation on federal habeas corpus review is of equal force. *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) (quoting *Willeford v. Estelle*, 538 F.2d 1194, 1196-98 (5th Cir. 1976)). Absent a constitutional violation, the Florida Supreme Court is the final arbiter of Florida evidentiary law. *See Mills v. Singletary,* 161 F.3d 1273, 1289 (11th Cir. 1998), *cert. denied*, 528 U.S. 1082 (2000); *Hunt v. Tucker*, 93 F.3d 735,

737 (11th Cir. 1996) (per curiam); *Baxter v. Thomas,* 45 F.3d 1501, 1509 (11th Cir.), *cert. denied,* 516 U.S. 946 (1995).

In the instant case, the Florida Supreme Court interpreted Florida's law of evidence as limiting queries into areas beyond Dr. Diggs's area of expertise as a medical examiner. This Court cannot review this decision unless it amounts to an egregious, unsupportable application of state law, which it does not. As in Federal courts, one of the gatekeeping responsibilities of the Florida trial courts is to assure that an expert's opinions are based on relevant scientific methods, processes, and data rather than mere speculation.[7] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590 (1993); *Stokes v. State*, 548 So.2d 188, 195 (Fla. 1989) (adopting the test espoused in *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923)). The Florida Supreme Court's decision that the Dr. Diggs' testimony was inadmissible was completely consistent with Florida evidentiary law.[8] Thus, the merits of this claim will not be reviewed.

**GROUND THREE**

Under Florida law, one of the statutory aggravators in a capital case is whether the defendant has a prior violent felony conviction.  As written, Ground Three alleges two separate but related claims. The claims are premised on allegations of trial court error and prosecutorial misconduct related to the State's use of Finney's July 20, 1992 convictions

---

[7]"If scientific, technical, or other specialized knowledge will assist the trier of fact in understanding the evidence or in determining a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify about it in the form of an opinion; however, the opinion is admissible only if it can be applied to evidence at trial." Fla. Stat. 90.702.  *See also* Fed. R. Evid. 702.

[8]In support of his claim that the trial court erred in finding Dr. Diggs's testimony inadmissible, Finney cites *to Bedford v. State*, 589 So.2d 245, 249 (Fla. 1991).  Contrary to Finney's assertion, in *Bedford*, it was not the medical examiner, but rather Dr. Fateh, a forensic pathologist employed by the defense, who testified that "the injuries to the victim's neck reported in the autopsy report were consistent with erotic sexual asphyxia."  *Id.*  On cross-examination, however, Dr. Fateh testified that the victim's injuries were also consistent with death by strangulation, and in his opinion, "based on the reports and depositions he had reviewed, [the victim] died of asphyxia but the death was probably not related to erotic activity."  *Id.*

for kidnapping, robbery with a weapon, and sexual battery with the threat of use of great force to support the statutory aggravator of a prior violent felony conviction. *See Finney v. State*, 645 So.2d 465 (Fla. 1994) ("Baker").  The victim was Judy Baker.

Because Finney had not yet been sentenced in the Baker case, when he proceeded to trial on the Sutherland homicide, there was no certified copy of a judgment of conviction to support the statutory aggravator of a prior violent felony conviction.  In anticipation of presenting testimony by Mrs. Baker during the penalty phase of Finney's trial, the State moved the trial court to take judicial notice of his prior convictions and the identity of the victim.

According to Finney, the trial court erred in denying trial counsel's motion to prevent Mrs. Baker from testifying concerning the facts of the case  (Dkt. 23 at 50). Trial counsel argued that the appropriate way of getting the facts and circumstances of the prior convictions before the jury was to have the detective who investigated the case testify rather than allowing the State to inflame the jury by presenting Mrs. Baker's testimony. After hearing argument from counsel (Dkt. 28, Ex. A6, Vol. VI at Tr. 798-805), the trial court denied trial counsel's motion, *id.* at 812.[9]

When the penalty phase of Finney's trial commenced, the trial court took judicial notice of Finney's prior convictions and instructed the jury that it was to consider the convictions as a fact that had been proved beyond a reasonable doubt (Dkt. 28, Ex. A6,

_____

[9]Florida's death penalty statute provides, in pertinent part, that "[i]n the proceeding, evidence may be presented as to any matter that the court deems relevant to the nature of the crime and the character of the defendant and shall include matters relating to any of the aggravating or mitigating circumstances enumerated in subsections (5) and (6). Any such evidence which the court deems to have probative value may be received, regardless of its admissibility under the exclusionary rules of evidence, provided the defendant is accorded a fair opportunity to rebut any hearsay statements. However, this subsection shall not be construed to authorize the introduction of any evidence secured in violation of the Constitution of the United States or the Constitution of the State of Florida. The state and the defendant or his counsel shall be permitted to present argument for or against sentence of death." Fla. Stat. 921.141(1).

Vol. VI at Tr. 818-819). On direct examination, Mrs. Baker provided a detailed account of the January 29, 1991 rape and robbery (Dkt. 28, Ex. A6, Vol. VI at Tr. 820-27).

At one point in Mrs. Baker's testimony, the prosecutor sensed that she was becoming visibly upset and requested a recess. After the jury was taken from the courtroom, trial counsel moved for a mistrial, arguing that Mrs. Baker was crying in front of the jury.  Acknowledging that Mrs. Baker appeared to be on the verge of crying, the trial court judge stated that she did not see any tears.  The prosecutor also stated that she did not see any tears, but she requested a recess to give Mrs. Baker an opportunity to regain her composure. Trial counsel's motion for a mistrial was denied, but her request for a cautionary instruction to the jury regarding sympathy was granted, with the instruction to be given after Mrs. Baker concluded her testimony.

Mrs. Baker returned to the stand, and the State concluded its direct examination. On cross-examination, trial counsel, who had represented Finney in the Baker case, attempted to elicit testimony from Mrs. Baker regarding the description she gave the police of the rapist shortly after the incident occurred (Dkt. 28, Ex. A6, Vol. VI at Tr. 834).  The trial court upheld the State's lingering doubt argument, but did allow trial counsel to elicit testimony from Mrs. Baker that other than the sexual battery, Finney did not cut or otherwise inflict any injury upon her. Following Mrs. Baker's testimony, the trial court instructed the jurors that sympathy should not play any part in their decision (Dkt. 28, Ex. A6, Vol. VI at Tr. 839).

The second trial court error of which Finney complains occurred during the penalty phase closing argument when the prosecutor referred to the Baker rape, arguing as follows:

> And what do we know about the circumstances of that rape? What do we know? It's in the same area. It's in Temple Terrace. As Mr. Escobar had her point out, she wasn't injured and she wasn't cut. Was she threatened? Remember the comment about the face? "I should just take care of that now."
>
> What else do we know about it? She was tied behind the back. She was gagged with her own blouse. And she had to go through one of the ultimate human horrors that you live through -- the key being "live through" -- but then she had to go through being touched, fondled and raped. That is Charles Finney.
>
> We also know about the weapon that was used. You see, the weapon of choice for Charles Finney in these two situations was a knife. And we also know as well in Judy Baker's case that the value for the rape of Judy Baker was fifty-five dollars, for money. That is disgusting.

Dkt. 28, Ex. A6, Vol. VI at Tr. 901-02.  Trial counsel objected and moved for a mistrial on the ground that the prosecutor was improperly arguing his "personal belief" to the jury. The objection was overruled, and the motion for a mistrial was denied.

Finney asserts that the trial court erred in denying trial counsel's motion to preclude Mrs. Baker's testimony (Dkt. 23 at 50).  Finney further contends that the trial court erred in overruling trial counsel's objection to the prosecutor's comment during closing argument and denying his motion for a mistrial.

On direct appeal, the Florida Supreme Court summarily rejected this claim, finding as follows:

> Next, we address Finney's claim that the rape/robbery victim should not have been allowed to testify about the facts underlying the prior convictions, because her testimony was inflammatory and unnecessarily prejudicial in light of the fact the same information could have been presented by a detective. It is clear that relevant evidence concerning the circumstances of a prior violent felony conviction is admissible in a capital sentencing proceeding, unless admission of the evidence would violate the defendant's confrontation rights, or the prejudicial effect of the evidence clearly outweighs its probative value. *Duncan v. State*, 619 So.2d 279, 282 (Fla.), *cert. denied*, 510 U.S. 969, 114 S.Ct. 453, 126 L.Ed.2d 385 (1993); *Rhodes v. State*, 547 So.2d 1201, 1204-05 (Fla. 1989). However, the details of the collateral offense must not be emphasized to the point where that offense

becomes the feature of the penalty phase. *Duncan*; *Stano v. State*, 473 So.2d 1282 (Fla. 1985), *cert. denied*, 474 U.S. 1093, 106 S.Ct. 869, 88 L.Ed.2d 907 (1986).

Finney points out that the victim of the collateral offense was allowed to testify extensively as to what occurred and, at one point in her testimony, became visibly upset. Our review of the record leads us to conclude that, under the circumstances, the testimony was not unduly prejudicial. *Cf. Stewart v. State*, 558 So.2d 416, 419 (Fla. 1990) (not error to allow victims of prior violent felonies resulting in convictions to testify concerning facts of prior offenses where testimony was not unduly prejudicial). The victim's testimony was the only evidence of the circumstances resulting in the prior conviction. The testimony was not overly emotional; nor was it made the focal point of the proceedings. When the witness became upset, a recess was called and it is unclear whether the jury even noticed her lack of composure. Moreover, following the testimony, the court cautioned the jury that sympathy should play no part in its deliberations.

While the State did not unduly emphasize the victim's testimony during closing argument, the prosecutor did refer to the collateral crime as "disgusting." Defense counsel objected to the comment. However, the objection was not based on the ground raised here -- prejudicial effect of testimony and argument concerning prior convictions. Rather, defense counsel objected and moved for a mistrial contending that the prosecutor was improperly "arguing his personal views." Thus, the portion of this claim challenging the State's argument is procedurally barred. *Steinhorst*. Moreover, even if the issue had been properly preserved, the argument was not so egregious as to warrant reversal. *Stano*.

*Finney*, 660 So.2d at 683.

Respondent argues that this claim is procedurally barred because it is not properly exhausted in state court. Having carefully reviewed Finney's appellate briefs, this Court agrees that Finney failed to alert the Florida Supreme Court that he was complaining about a violation of *federal* law. (Dkt. 28, Ex. A10 at R. 64-71). In fact, Finney made no reference in his appellate brief to *any* constitutional or federal rights that were allegedly violated as a result of Mrs. Baker's testimony or the prosecutor's comment on her testimony during closing argument.

The closest Finney came to presenting an argument of a federal nature was a quotation in his initial appellate brief, *see* Dkt. 10, Ex. A-10 at 69, from *Rhodes v. State* -- "the line must be drawn when that testimony is not relevant, gives rise to a violation of a defendant's confrontation rights, or the prejudicial value outweighs the probative value." 547 So.2d 1201, 1204-05 (Fla. 1989). References in an appellate brief to a state court decision, standing alone, with no reference to the federal nature of a claim, is simply not good enough to satisfy the requirement that a state petitioner "fairly present" his federal claim to the state court before seeking federal relief. *See Baldwin v. Reese,* 541 U.S. 27, 33 (2004). This is clearly an instance where the habeas petitioner failed to "apprise the state court of his claim that the . . . ruling of which he complained was not only a violation of state law," but also his federal constitutional rights. *Duncan v. Henry*, 513 U.S. 364, 366 (1995) (per curiam).

Finney's arguments rested solely on state law interpretations, and as set forth above, the Florida Supreme Court decided this claim solely under state law principles. *Finney v. State,* 660 So.2d at 683. As such, this claim is procedurally defaulted. *McNair v. Campbell,* 416 F.3d 1291, 1302-04 (11th Cir. 2005), *Kelley,* 377 F.3d at 1343-45; *see also Duncan v. Henry,* 513 U.S. at 366.

Citing *Davis v. Singletary*, 119 F.3d 1471, 1479 (11th Cir. 1997), Finney contends that "once a state supreme court on direct review has eschewed a procedural bar and based its disposition solely on a rejection of the merits of a claim, no amount of procedural bar holdings as to that claim in future proceedings will suffice to bar the claim from federal habeas review" (Dkt. 30 at 12). Finney's reliance on *Davis* is misplaced. In *Davis*, the circuit court addressed the effect of a state court's decision to address the merits of a claim that was procedurally defaulted under the *state's* rules of criminal procedure. The

issue in this case is exhaustion of the federal dimension of the claim, a statutory requirement which the State did not expressly waive in this case. *See* 28 U.S.C. 2254(b)(3). *See McNair v. Campbell,* 416 F.3d at 1302-04.

Applying § 2254(b), Finney is procedurally barred from raising this claim.[10] Consequently, Ground Three will not be reviewed on the merits.

**GROUND FOUR**

Ground Four is related to Ground Three.  Here, Finney contends that the trial court erred in refusing to allow trial counsel to cross examine Mrs. Baker regarding the description she gave to the police of her attacker, arguing that "when the prosecution chooses to introduce the testimony of witnesses in aggravation, a capital defendant is entitled to cross examination and rebuttal" (Dkt. 23 at 54).

First, Respondent asserts that Finney failed to present the federal dimension of this claim to the state court. A review of Finney's initial appellate brief to the Florida Supreme Court reveals he argued on direct appeal that:

> By prohibiting cross-examination of Mrs. Baker as to her description of her assailant and the accuracy of her identification of appellant, after the state had presented to the jury her detailed and emotionally vivid testimony about what a person "who later became known to [her] as Charles Finney" had done to her, the trial court violated appellant's rights to confrontation, due process, and a reliable penalty determination.

---

[10]As discussed above, the procedural bar doctrine has two narrow exceptions -- a petitioner must (1) show both "cause" for his failure to properly raise the claim on direct appeal and actual "prejudice" resulting from this default; or (2) demonstrate that a review of the barred claim is necessary to correct a fundamental miscarriage of justice. *See Grossman v. Crosby,* 359 F.Supp.2d 1233, 1249 (M.D.Fla. 2005). In his reply to the response, Petitioner argues that any procedural default should be imputed to the State because Finney was represented by court-appointed counsel, but fails to cite any case which supports his argument.  Likewise, Finney fails to cite any legal authority for finding that ineffective assistance of post-conviction counsel establishes cause for a procedural default. Finney has not asserted sufficient cause or prejudice to excuse his default or demonstrated that a fundamental miscarriage of justice will result if the Court does not reach the merits of this claim.

Dkt. 28, Ex. A10 at 32-33.  Citing, *inter alia*, *Proffitt v. Wainwright*, 685 F.2d 1227, 1254 (11th Cir. 1982), *cert. denied*, 464 U.S. 1003 (1983), Finney further argued that the "right of confrontation protected by cross-examination is a right that has been applied to the sentencing process." The Court finds that this argument clearly preserved this claim for federal review.

> In rejecting this claim, the Florida Supreme Court held:

> We also find no merit to Finney's claim challenging the trial court's refusal to allow him to cross-examine the rape/robbery victim about her initial description of her attacker. *The claim is not properly before the Court because Finney never proffered the testimony he sought to elicit from the witness and the substance of that testimony is not apparent from the record.* § 90.104(1)(b), Fla.Stat. (1991); *Lucas v. State*, 568 So.2d 18, 22 (Fla. 1990) (proffer necessary to preserve claim that trial court improperly excluded testimony). Without a proffer it is impossible for the appellate court to determine whether the trial court's ruling was erroneous and if erroneous what effect the error may have had on the result. *See Ketrow v. State*, 414 So.2d 298 (Fla. 2d DCA 1982). Moreover, Finney never questioned the validity of the prior conviction and, as the trial court noted, it is not appropriate to go behind the jury's verdict in the prior case and attempt to retry those convictions. In any event, neither Finney's due process right under the Fourteenth Amendment nor his Sixth Amendment right to cross examine this witness were violated, as he had every opportunity to bring out any facts from the collateral offense that may have minimized his behavior or otherwise lessened the aggravating weight of the prior conviction.

Finney, 860 So.2d at 684.

Respondent contends that if the Court finds that the federal nature of this claim was presented to the state court, Finney has not demonstrated that the state court's rejection of this claim is contrary to or an unreasonable application of Supreme Court precedent. Respondent's argument on this point is well taken.

As discussed above, a petitioner for federal habeas relief carries the burden of establishing that the state court's adjudication of his claim is "contrary to" clearly established precedent of the Supreme Court of the United States or involves an

"unreasonable application" of such precedent. *Williams*, 529 U.S. at 362.  Finney cites *Olden v. Kentucky*, 488 U.S. 227 (1988), and *Pointer v. Texas*, 380 U.S. 400 (1965), in support of this claim.  Both cases are, however, distinguishable.

In *Olden*, two men indicted for kidnapping, rape, and forcible sodomy asserted a defense of consent. *Olden v. Kentucky*, 488 U.S. at 229.  The theory of their defense was that the victim concocted the rape story to protect her relationship with her boyfriend. *Id.* at 230. The victim admitted that she had been out drinking at a bar and after becoming intoxicated, voluntarily left with one of the defendants. *Id.* at 228. According to the victim, the defendants raped her and then dropped her off at her boyfriend's house. Id. Hearing a noise outside of his home, her boyfriend went out to investigate and saw his girlfriend get out of the car. *Id.* at 228-29. The victim told her boyfriend that the defendants had raped her. *Id.* at 229.

At trial, the defendants attempted to show that the victim had motive to lie by introducing evidence that at the time of trial, she was living with the boyfriend who had seen her get out of the car in an intoxicated state on the night of the alleged rape. *Id.* The trial judge excluded all evidence of the victim's living situation, refusing to allow defense counsel to cross-examine the victim on the issue even after she claimed on direct examination that she was living with her mother. *Id.* at 230. The jury acquitted one defendant on all charges and acquitted the second defendant of kidnapping and rape, but convicted him of forcible sodomy. *Id.* at 230.

The Supreme Court held that the state court's refusal to permit cross-examination on the victim's cohabitation with her boyfriend violated the defendant's Sixth Amendment right to confront the witnesses against him. *Id.* at 232-33. While emphasizing that "the exposure to a witness' motivation in testifying is a proper and important function of the

constitutionally protected right of cross-examination," the Supreme Court acknowledged that trial courts have discretion to impose reasonable limits on cross-examination, but concluded that "the limitation here was beyond reason" because the evidence about the victim's relationship had such strong potential to cast doubt on her testimony. *Id.* at 232.

In *Pointer*, the petitioner and another defendant were charged with robbery. During a preliminary hearing at which the defendants were not represented by counsel, the victim testified against both defendants. By the time the case was tried, however, the victim had moved out of state. Over petitioner's unsuccessful objection, the prosecution introduced the transcript of the victim's testimony at the preliminary hearing. The petitioner was convicted.  The Supreme Court set aside the petitioner's conviction, finding that the Confrontation Clause includes a right of cross-examination, a central purpose of which is to "expos(e) falsehood and bring . . . out the truth in the trial of a criminal case." 380 U.S. at 404. The Supreme Court held that where, as in *Pointer*, the "statement offered against petitioner at his trial ha(s) not been taken at a time and under circumstances affording petitioner through counsel an adequate opportunity (for) cross-examin(ation) . . ., its introduction . . . in a criminal case against (the petitioner) . . . amount(s) to denial of the privilege of confrontation guaranteed by the Sixth Amendment." *Id.* at 407.

In the present case, when trial counsel asked Mrs. Baker about the description she originally gave to the investigating officers of her attacker, he was attempting to raise lingering doubt about the prior conviction by establishing that Finney did not fit that description.  Finney was not, as in *Olden*, 488 U.S. at  232, attempting to elicit testimony regarding Mrs. Baker's motivation to testify. *Pointer* is likewise distinguishable because Finney, unlike Pointer, was present, represented by counsel, when the State adduced

testimony from Mrs. Baker during the penalty phase regarding the circumstances of the prior conviction.

A federal habeas petitioner bears the burden of demonstrating that he meets the criteria for relief under § 2254.  Finney has not shown that either the reasoning or the result of the state court decision is at odds with any United States Supreme Court case, much less one in which the facts are "materially indistinguishable." *See Bell v. Cone*, 535 U.S. 685, 694 (2002). The Court is unable to say that the trial court's application of the law concerning testimony by the victim of a prior violent felony conviction during the penalty phase of a capital trial was objectively unreasonable.  Finney is not entitled to relief on this claim.

**GROUND FIVE**

During the penalty phase of Finney's trial, he was shackled.  The trial court rejected trial counsel's request that the shackles be removed, stating:

> [F]irst of all, for the record, I did not order the shackles. The shackles were decided as a matter of security by the bailiffs and the Sheriff's Office. My feeling about that is, that is their area of expertise. If they made that decision, then I'm going to support that decision.

Dkt. 28, Ex. A6, Vol. VI at Tr. 815-17.

Finney argues that there is no evidence in the record to support the need for restraints, contending that the trial court erred in deferring to the sheriff's judgment that such restraint was necessary without inquiring into the reasons behind that decision. Finney raised this claim on direct appeal.  In rejecting the claim, the Florida Supreme Court held:

> We also reject Finney's claim that the trial court erred when it failed to inquire into the reasons why he was shackled during the penalty phase of the trial. Finney relies on this Court's decision in *Bello v. State*, 547 So.2d 914 (Fla. 1989). In *Bello*, we held that where defense counsel objects to and

requests inquiry into the necessity for shackling the defendant during the penalty phase of a capital trial, the trial court must not defer to the sheriff's apparent judgment that such restraint is needed without first inquiring into the reasons for that decision. 547 So.2d at 918.

At the beginning of the penalty phase in this case, defense counsel requested that Finney's shackles be removed. The judge asked, "That is a security measure that the Sheriff's Office would like?" To which the bailiff responded, "Yes." The judge then denied defense counsel's request and pointed out that the shackles were obscured by a board and could be removed during a recess before Finney took the witness stand. Defense counsel responded that Finney had agreed to behave throughout the proceeding. The judge then told counsel that the decision was in the sheriff's area of expertise and she would support that decision. No further inquiry was made.

Unlike defense counsel in *Bello*, counsel in this case acquiesced to proceeding without further inquiry. No objection was made to the court's decision to defer to the sheriff on the matter, nor did counsel request that the court inquire into the reasons for the sheriff's decision. Because the specific claim raised here was never raised to the trial court, the claim is not preserved for appeal. *Harmon v. State*, 527 So.2d 182, 185 (Fla. 1988); *Steinhorst v. State*, 412 So.2d 332, 338 (Fla. 1982).

*Finney*, 660 So.2d at 682.

Respondent argues that this claim is not properly before this Court because Finney failed to preserve the issue for appeal in accordance with state law. The transcript confirms that while trial counsel initially questioned the use of shackles, she did subsequently acquiescence to keeping the shackles in place until Finney took the stand to testify.

Florida's contemporaneous objection rule requires that an objection be raised at the proper stage before or during trial. Any objections which are raised for the first time on appeal are deemed untimely and procedurally barred. *See Terry v. State*, 668 So. 2d 954 (Fla. 1996). The United States Supreme Court has held that absent a showing of cause or actual prejudice, habeas relief is barred where a state prisoner failed to comply with a state's contemporaneous objection rule. *See Wainwright v. Sykes*, 433 U.S. 72, 90 (1977)

(discussing Florida's contemporaneous objection rule, the court held that "[a]ny procedural rule which encourages the result that those proceedings be as free of error as possible is thoroughly desirable, and the contemporaneous-objection rule surely falls within this classification").

Florida's contemporaneous objection rule is well-established, and has been consistently upheld when applied in capital cases and subsequent habeas petitions. *See, e.g., Bertoletti v. Dugger*, 883 F.2d 1503 (11th Cir. 1989) (affirming lower court's holding that where trial counsel made no objection to general verdict form, that claim is procedurally barred under Florida law on appeal); *Dobbert v. Strickland*, 718 F.2d 1518, 1524-25 (11th Cir. 1983) (challenge to prosecutor's use of peremptory challenges to exclude anti-death penalty jurors from jury panel is barred under Florida's contemporaneous objection rule); *Ford v. Strickland*, 696 F.2d 804, (11th Cir. 1983) (failure to raise motion to suppress confession on direct appeal waived consideration on habeas corpus petition). Finney has presented no argument explaining how the continued use of this long-existing rule violates the United States Constitution or Supreme Court precedent.

The Court agrees with Respondent that this claim is procedurally barred; therefore it cannot be raised in a habeas petition before this Court. *See Smith v. Dugger*, 840 F.2d 787, 791 (11th Cir. 1988); *LeCroy v. Fla. Dept. of Corrections*, 421 F.3d 1237, 1260 (11th Cir. 2005). Because Finney's claim was not preserved at trial, the Florida Supreme Court's procedural-bar determination under Florida law rests on an independent and adequate state ground that precludes federal habeas consideration of this issue. *See id*. In his reply to the response, Finney presents a generic argument that "[a] state procedural ground is not 'adequate' unless the procedural rule is 'strictly or regularly followed,'" citing *Johnson*

*v. Mississippi*, 486 U.S. 578, 587 (1988).   Finney fails, however, to cite any Florida case in which the court failed to enforce the contemporaneous objection rule.   As discussed *supra* n. 10, Finney has not asserted sufficient cause or prejudice to excuse his default or demonstrated that failure to address the merits of this claim will result in a fundamental miscarriage of justice.

**GROUNDS SIX AND SEVEN**

Finney next contends that he was denied effective assistance of counsel during the guilt and penalty phases of his trial. Since the standard of review for trial counsel's performance is the same at each stage of a defendant's criminal proceedings, the two grounds will be discussed together.

To establish a prima facie claim of ineffective assistance of counsel at trial, Finney must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance is performance which is objectively unreasonable under prevailing professional norms.  *Id.* at 688. Prejudice results when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  "[T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776 (1987)). Because the ultimate resolution of ineffective assistance of counsel claims is a mixed question of law and fact, *Thompson v. Haley*, 255 F.3d 1292, 1297 (11th Cir. 2001); *Meeks v. Moore*, 216 F.3d 951, 959 (11th Cir. 2000), the presumption of correctness contained in § 2254(e)(1) does not apply to this determination.  *Parker v. Head*, 244 F.3d at 835-37. State court findings of historical facts made in the course of evaluating an ineffectiveness

claim are, however, subject to a presumption of correctness under 28 U.S.C. § 2254(e) unless the petitioner demonstrates by clear and convincing evidence that they are incorrect, see *Williams v. Taylor,* 529 U.S. at 412-413, a burden that Finney has failed to carry. *See* § 2254(e)(1) ("[A] determination of a factual issue made by a state court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence").

Finney raised his ineffective assistance of counsel claims in his amended Rule 3.850 motion (Dkt. 28, Ex. C1, Vol. I at PC-R. 133).  On May 26, 1999, the trial court conducted a *Huff* hearing (Dkt. 28, Ex. C2, Vol. II at PC-R. 272). During oral argument, both Finney and the State cited the *Strickland* standard in support of their respective positions on his ineffective  assistance of counsel claims. *See* Dkt. 28, Ex. C2, Vol. II at PC-R. 272-98. Post-conviction counsel advised the trial court that the ineffective assistance of counsel claims and the claim of newly discovered DNA evidence were the only two of the five claims raised in the amended Rule 3.850 motion that needed to be addressed.  *Id.* at PC-R. 274.  The trial court orally denied all of Finney's ineffective assistance claims and ordered an evidentiary hearing on his DNA claim. The transcript of the hearing reflects  that the trial court applied the correct standard of review for an ineffective assistance of counsel claim, as enunciated in *Strickland*.

On May 4, 2000, post-conviction counsel withdrew the DNA claim.  On October 31, 2000, the trial court entered a written order denying Finney's Rule 3.850 motion (Dkt. 28, Ex. C3, Vol. III at PC-R. 335-340). Citing *Strickland*, the Florida Supreme Court affirmed the trial court's decision. *See Finney v. State*, 831 So.2d at 657.

Because the state courts applied the correct standard of review for Finney's ineffective assistance of counsel claims, to be entitled to relief under § 2254, Finney must

establish that the state courts' application of the *Strickland* standard in reaching the determination that the claims raised in his Rule 3.850 motion lack merit was objectively unreasonable or that the decision "was based on an unreasonable determination of the facts in light of the evidence presented." *See* 28 U.S.C. § 2254(d).

**Voir Dire**

First, Finney asserts that trial counsel performed a "perfunctory" voir dire, ignoring the racial overtones inherent in cases where the defendant, an African-American male, is accused of murdering a white woman. Finney contends that trial counsel was ineffective for failing to determine "the possibility of racial bias of prospective jurors." According to Finney, trial counsel was alerted to the potential of racial bias when a member of the venire raised the issue during voir dire.

Effective assistance of counsel is required during the voir dire process. *Brown v. Jones*, 255 F.3d 1273, 1279-80 (11ᵗʰ Cir. 2001)*; Hughes v. United States,* 258 F.3d 453, 456 (6th Cir. 2001). However, because voir dire is recognized to involve considerations of strategy, deference is given to counsel's actions during voir dire. *Brown*, 255 F.3d at 1280; *Teague v. Scott,* 60 F.3d 1167, 1172 (5th Cir. 1995). A petitioner claiming ineffective assistance of counsel during voir dire must show that trial counsel's actions were "so ill chosen that it permeates the entire trial with obvious unfairness." *Id.* (quoting *Garland v. Maggio,* 717 F.2d 199, 206 (5th Cir. 1983)), a situation which did not happen in the instant case. Further, in order to satisfy the prejudice prong of *Strickland,* Finney must show that the selection process produced a biased juror. *Hughes,* 258 F.3d at 458.

This claim was raised and summarily rejected by the trial court during the hearing on Finney's Rule 3.850 motion (Dkt. 28, Ex. C2, Vol. II at PC-R. 276-77). In its order affirming the trial court's decision, the Florida Supreme Court found:

First, defendant complains that a potential juror brought up the race issue. This juror was excused for cause. The record clearly establishes that a question was posed to juror Kinsley[11] about whether he had ever been wrongly accused of doing something. Mr. Kinsley responded, "I thought it was a racial thing." It is clear that Mr. Kinsley is responding to the posed question and is not making a comment on the instant case.

Defendant complains that the voir dire was not adequate. The record speaks for itself and the transcript of the complete voir dire is attached.

Defendant Finney also argues that the prosecution extracted promises from the jurors regarding their ability to be fair and alluded to the additional evidence they would hear in the second phase. The transcript clearly establishes that the prosecutor asked the jury to "promise Mr. Finney that they would keep an open mind." Furthermore, Defendant's contention fails under the analysis of *Strickland*. It is the obligation of counsel to determine in voir dire if a juror can be fair and unbiased [in] the penalty phase.

Counsel for defendant Finney acknowledges that his complaint about the prosecutor interjecting his personal feelings was procedurally barred.

Defendant Finney complains that counsel failed to object when the prosecutor misstated the law. The trial court clearly instructed the jury that the court instructs on the law, not counsel.

The last point in sub-issue A of Claim One was a complaint that the prosecutor excused two jurors, Silas and Jennings, for cause who were opposed to the death penalty. The record is clear that neither juror was successfully rehabilitated. The excusal for cause was correct.

*Finney*, 831 So.2d at 657.

As to Finney's assertion that a member of the venire raised the issue of racial bias,

the transcript reflects the following exchange during voir dire:

Trial counsel:   This question is directed to this side of the room: Has anyone on this side of the room ever been wrongly accused of doing something that wasn't so nice?  Okay, Ms. [sic] Kinsey.  How did that make you feel?

Kinsey:          I thought it was a racial thing at the time.

---

[11]While there is a variation in the spelling of the prospective juror's name, this is not material to the resolution of this claim.

Dkt. 28, Ex. A2 at Tr. 168.   During the bench conference, the State moved without objection to remove Kinsey for cause, and the trial court agreed (Dkt. 28, Ex. A3, Vol. III at Tr. 217; 222).  This Court agrees with the Florida Supreme Court that, taken in context, Kinsey was referring to a personal experience unrelated to Finney's case.

Finney does not address any particular seated juror's voir dire and he fails to assert, much less provide clear and convincing evidence, that the jurors empaneled could not be impartial. Absent evidence to the contrary, the Court must presume that the jurors were fair and impartial "as indeed they swore to be." *United States v. Khoury,* 901 F.2d 948, 955 (11th Cir. 1990) (footnote omitted).  Moreover, as the transcript reflects, trial counsel was sensitive to the racial overtones of the case, as demonstrated by his *Neil*[12] challenge when the State moved to strike the first person of African-American descent on the venire panel, requiring the State to proffer a racially neutral reason for exercising the challenge.  The trial court concluded that the State's proffer regarding the prospective juror's prior felony conviction was sufficient to meet its burden under *Neil.   Id.* at 231-32. The Court determines that trial counsel's performance in this regard was not unreasonable under prevailing professional norms. *Strickland,* 466 U.S. 688 ("The proper measure of attorney performance remains simply reasonableness under *prevailing* professional norms.").

Finney has failed to establish that the trial court's finding that he failed to meet *Strickland*'s two-prong test is contrary to or an unreasonable application of clearly established Federal law or resulted in a decision that is based on an unreasonable determination of the facts in light of the evidence presented.  Having failed to make the

---

[12]In *State v. Neil,* 457 So.2d 481 (Fla. 1984), the Florida Supreme Court held that a jury in Florida must be selected based on the characteristics of the individual, not on race. Any objection to potentially racially-motivated jury challenges trigger the requirement that the trial judge critically examine the reasons for the exercise of those challenges, barring specific circumstances in the record that eliminate all question of discrimination. *Valentine v. State,* 616 So.2d 971 (Fla. 1993).

necessary showing, Finney is not entitled to § 2254 relief on this claim of ineffective assistance of counsel.

**Prosecutorial Comments**

Finney further argues that trial counsel was ineffective in failing to object to comments made by the prosecutor during voir dire and the penalty phase closing argument.  First, Finney argues that trial counsel should have objected during voir dire to a misstatement of the law by Assistant State Attorney Cox during questioning of a prospective juror regarding penalty phase issues. Taken in context, Finney objects to the underlined portion of the following excerpts from the transcript:

> Attorney Cox: You mentioned earlier as well that if the evidence went on in the second part as well – let me ask you this – and you know, this probably will not be the case here if we get to that point, But if the State were to go into the second phase and not present any evidence, okay, <u>and we're relying on the facts of this murder, which the Legislature says we can do, -- if certain facts appear, we can still argue for the death penalty to you -- if the State were to go forward with no facts -- which wouldn't happen here -- but if that were the case, do you think you can still consider the death penalty based upon the facts of the murder itself.</u>" (R.130-131).

> Ms. Goff: Absolutely.

Dkt. 28, Ex. A2, Vol. II at Tr. 130-31.

> Mr. Thomas: You mentioned earlier that the legislature says specific things you can go on for the death penalty, maybe one or more items that you can go on.  That is leaving the decision up to your office, isn't it, as to really whether we go to the death penalty or not?  Why do you say in one case, "I won't go for the death penalty even though some of these things are there, and another one not? Why is it, because with first-degree murder you say sometimes you don't have the death penalty, I am still a little confused about that.

> Attorney Cox: I understand, and believe me, I'm not trying to avoid your question or avoid answering your question at all.  Okay?  I'm not trying to do that.  All I can discuss with you right now is what the law is and what the law says.  <u>And the law says that if certain aggravating factors, one or more, – I mean, you just need one –</u> but if certain

> aggravating factors exist, then the people of the state of Florida can come before the jury and say, "Look, because of this aggravating factor, we ask that you impose the death penalty and make that recommendation." I mean, the decision – I mean, you know, I guess the decision --

Mr. Thomas:  The decision is with your office.

Attorney Cox:  It's with us whether to do it. The decision is with the jury, though, as to whether or not to make that recommendation.

Dkt. 28, Ex. A2, Vol. II at Tr. 153. Finney argues that trial counsel was ineffective for failing to object to Attorney Cox's statement as an incorrect statement of the law because "for a death sentence to be imposed, it requires a weighing of the aggravating and mitigating factors."

First, Attorney Cox was explaining to the venire how the State determines whether the facts of a case warrant seeking the death penalty, not how the jury was to reach a decision on its  sentencing recommendation. Trial counsel is not ineffective for failing to raise a frivolous objection. Second, the record reflects that, as the Florida Supreme Court stated in rejecting this claim, "[t]he trial court clearly instructed the jury that the court instructs on the law, not counsel." *Finney*, 631 So.2d at 657. Addressing the jury, the trial court explained the role of the attorneys in the trial and informed the jury that the court, not the attorneys, would decide what law was to be applied and provide it with instructions regarding the law (Dkt. 28, Ex. A3, Vol. III at Tr. 247; 248).

Finally, assuming, without deciding, that Attorney Cox's statement regarding the law was misunderstood by the venire, it did not affect Finney's substantial rights because the trial court judge explicitly corrected the purported error when she gave the jurors the following instruction before they heard evidence during the penalty phase of Finney's trial:

Ladies and gentlemen, you have found the defendant guilty of murder in the first degree. The punishment for this crime is either death or life imprisonment without possibility of parole for twenty-five years.

The final decision as to what punishment shall be imposed rests solely with the judge of this Court.  However, the law requires that you, the jury, render to the Court an advisory sentence as to what punishment should be imposed upon the defendant. And the law requires the Court to give great weight to your recommendation.  It is only under rare circumstances that this Court could impose a sentence other than what you recommend.

The State and the defendant may now present evidence relative to the nature of the crime and the character of the defendant. You are instructed that this evidence, when considered with the evidence you have already heard, is presented in order that you might first determine – excuse me – in order that you might determine first whether sufficient aggravating circumstances exist that would justify the imposition of the death penalty; and second, whether there are mitigating circumstances sufficient to outweigh the aggravating circumstances, if any.

At the conclusion of the taking of the evidence and after the argument of counsel, you will be instructed on the factors in aggravation and mitigation that you may consider.

Dkt. 28, Ex. A6, Vol. VI at Tr. 817-18.   Before the jury began its penalty phase deliberations, the trial court instructed it that:

Ladies and gentlemen, it is now your duty to advise the Court as to what punishment should be imposed upon the defendant for his crime of murder in the first degree. It is your duty to follow the law that will now be given to you by me and render to me an advisory sentence based upon your determination as to whether sufficient aggravating circumstances exist to justify the imposition of the death penalty, or whether sufficient mitigating circumstances exist to outweigh any aggravating circumstances found to exist.

Your advisory sentence should be based upon the evidence that you have heard while trying the guilt or innocence of the defendant, and evidence that has been presented to you in these proceedings.

Dkt. 28, Ex. A6, Vol. VI at Tr. 916-19.  This instruction plainly told the jury that "for a death sentence to be imposed, it requires a weighing of the aggravating and mitigating factors."

"A curative instruction purges the taint of a prejudicial remark because a jury is presumed

to follow jury instructions." *United States v. Simon*, 964 F.2d 1082, 1087 (11th Cir. 1992) (quotation marks omitted). *See also Ingram v. Zant*, 26 F.3d 1047, 1053 (11th Cir. 1994) ("Because we presume that jurors follow such instructions, we must assume that the jury put aside any biases it may have had, applied the legal standards as enunciated in the jury instructions, and based its sentencing decision on the facts introduced at trial and sentencing.").

Finney has failed to establish that the state court's rejection of this claim is contrary to or an unreasonable application of clearly established Federal law or resulted in a decision that is based on an unreasonable determination of the facts in light of the evidence presented.  Having failed to make the necessary showing, Finney is not entitled to § 2254 relief on this claim.

**Excusal of Jurors for Cause**

Finney next asserts that trial counsel was ineffective in failing to object when the trial court excused jurors for cause who were opposed to the death penalty. Finney contends that two prospective jurors, Mr. Jennings and Mr. Silas, were wrongly excused for cause because although they professed to be opposed to capital punishment, each man indicated that he would keep an open mind and follow the law.  This claim is refuted by the transcript.

Taken in context, trial counsel succeeded in getting both Mr. Jennings and Mr. Silas to agree that they would keep an open mind in *listening* to the evidence, but neither of them renounced his earlier declaration that he would not, under any circumstances, impose the death penalty:

> State:        Okay, all right. Mr. Jennings, you indicated earlier, I believe, to Ms. Vogel that you were against capital punishment?

Mr. Jennings:   Right. I don't believe in an eye for an eye.

State:   Mr. Jennings, let me ask you, sir: If a person or if Mr. Finney in this case were convicted of first-degree murder, are you indicating to us under no circumstances could you impose capital punishment?

Mr. Jennings:   No, sir.

Dkt. 28, Ex. A2, Vol. II at Tr. 118.

State:   Okay. Mr. Silas, is that to say if a person were convicted of murder in the first-degree, that under no circumstances could you impose the death penalty?

Mr. Silas:   I'll say "Yes."

Dkt. 28, Ex. A2, Vol. II at Tr. 132.

Trial Counsel:   Okay. Now, concerning your views on the death penalty, do you understand that if you're selected as a juror in this case, Judge Sexton will instruct you on the law?

Mr. Jennings:   Yes.

Trial Counsel:   And you would have to follow the law as a juror in this case.  Do you understand that?

Mr. Jennings:   right.  But --

Trial Counsel:   Go ahead.

Mr. Jennings:   Can I ask you a question?

Trial Counsel:   Yes.

Mr. Jennings:   I have made myself explain already, I wouldn't vote for the death penalty.

Trial Counsel:   Then you cannot follow the law if the Judge instructs you?

Mr. Jennings:   I have been given an instruction that if I – that I can vote against it in the second phase.  You see, they said the majority wins.

Trial Counsel:   In the second phase, yes.

Mr. Jennings:   Right, in the second phase.

-37-

Trial Counsel:  Okay. My question is, though: Are you saying that even if you're selected as a juror and Judge Sexton reads you these instructions, you see, you have to keep an open mind that –

Mr. Jennings:  I'll keep an open mind, but I won't go for the death penalty.

Trial Counsel:  But you can keep an open mind?

Mr. Jennings:  Right.

Dkt. 28, Ex. A2, Vol. II at Tr. 173-74.

Trial Counsel:  Okay. Now, you also have very strong opinions about the death penalty. I didn't know whether you were able to say one way or the other, if you were a juror and it gets to the second phase, whether you can keep an open mind and listen to the evidence presented during the second phase before you will make up your mind?

Mr. Silas:  I can do that.

Trial Counsel:  You can?

Mr. Silas:  Yes.

Court:  I'm sorry, I didn't hear that last one.

Trial Counsel:  You need to answer that.


Mr. Silas  Yes, yes, I can listen to the evidence.

Dkt. 28, Ex. A2, Vol. II at Tr. 193.

During jury selection, the following exchange took place:

Court:  Okay.  First thing I want to do is go over the challenges for cause and see if we have enough left after the people we have already excused.

First, the State.  What I'm going to do is see if there is any we agree to first.  And if there are some who we agree on, fine, we'll get rid of them.  If not, then I'll come back.  So, let me hear who the State wants to excuse first.

State:  No. 2, Mr. Jennings.

| | |
|---|---|
| Court: | Anymore challenges for cause? |
| State: | . . . Okay. 25, Mr. Silas;  . . . |
| | . . . . . |
| Court: | Well, here's a coincidence.  None of you have the same challenges for cause.  Okay. I can probably just go and tell you who already.  What do you want to say about Mr. Jennings? |
| State: | He said he cannot impose the death penalty.  He said he will not impose the death penalty. |
| Court: | Okay Barbara, what do you want to say? |
| Trial Counsel: | I think I rehabilitated him. He said he can keep an open mind while listening. |
| Court: | I see I wrote down on this -- |
| Trial Counsel: | He can keep an open mind but can't go for the death penalty. Okay. |
| | . . . . . |
| Court: | Okay. I have him down as a cause. I'm going to go ahead and excuse him for cause . . . |

Dkt.28, Ex. A3, Vol. III at Tr. 218-19.

| | |
|---|---|
| Court: | That brings us down to 25 now, Silas, all right.  Let me hear from the State. . . . |
| State: | As to Mr. Silas, Judge, basically I think he was rehabilitated to the extent he said he could consider imposing the capital punishment, made it clear at first he couldn't.  But he also indicated that the fact that the State is seeking the death penalty would definitely enter into the decision-making in phase one which is clearly the – |
| Court: | What did he say when I asked him again, Barbara?  Because I have down originally that he said under no circumstances could he recommend the death penalty.  Then what did you ask him? |
| Trial Counsel: | I asked him when – if it came to the penalty phase and he was given the instructions, could he keep an open mind, and his response was, "Yes, I can do so." |

Court:             "I can do so"?

Trial Counsel: Yes, Your Honor.

Court:             Okay.  I mean, I don't know, because I had a concern.  He's one
                   that kind of jumped out at me as being sort of an obvious one in the
                   beginning.

State:             Are you arguing or talking to each other?

Trial Counsel: Talking to each other.

Court:             I'm going to excuse him for cause because I have not only that, but
                   I had written down two or three times that he was against.  Okay.
                   That is him for cause.

Dkt. 28, Ex. A3, Vol. III at Tr. 220-21.

In *Witherspoon*, the Supreme Court recognized that a juror who believes that

capital punishment should never be inflicted and is irrevocably committed to its abolition

could "nevertheless subordinate his personal views to what he perceived to be his duty to

abide by his oath as a juror and to obey the law of the state."  *Witherspoon v. State*, 391

U.S. 510, 515 n.7 (1968).  The holding in *Witherspoon* was, however, clarified in

*Wainwright v. Witt*, 469 U.S. 412 (1985):

> We therefore take this opportunity to clarify our decision in *Witherspoon,* and
> to reaffirm the above-quoted standard from *Adams*[13] as the proper standard
> for determining when a prospective juror may be excluded for cause
> because of his or her views on capital punishment.    That standard is
> whether the juror's views would "prevent or substantially impair the
> performance of his duties as a juror in accordance with his instructions and
> his oath."    We note that, in addition to dispensing with *Witherspoon*'s
> reference to "automatic" decisionmaking, this standard likewise does not
> require that a juror's bias be proved with "unmistakable clarity."    This is
> because  determinations  of  juror  bias  cannot  be  reduced  to
> question-and-answer sessions which obtain results in the manner of a
> catechism.    What common sense should have realized experience has
> proved:  many veniremen simply cannot be asked enough questions to
> reach the point where their bias has been made "unmistakably clear"; these

---

[13]*Adams v. Texas*, 448 U.S. 38, 45 (1980).

> veniremen may not know how they will react when faced with imposing the death sentence, or may be unable to articulate, or may wish to hide their true feelings.  Despite this lack of clarity in the printed record, however, there will be situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law. . . . [T]his is why deference must be paid to the trial judge who sees and hears the juror.

*Id*. at 424-26 (footnotes omitted).  *Witt*, a case arising on federal habeas, is controlling precedent in § 2254 proceedings. *See Greene v. Georgia*, 519 U.S. 145, 146 (1996).

In the instant case, the transcript reflects that trial counsel's attempt to rehabilitate Mr. Silas and Mr. Jennings failed. Mr. Silas and Mr. Jennings did not voice general objections to the death penalty or express conscientious or religious scruples against its infliction.  To the contrary, each man voiced, clearly and unambiguously, that he would not impose a sentence of death "under any circumstances."  Trial counsel's argument that the two jurors should not be struck for cause failed. As the Supreme Court noted in *Greene*, *id.*, because such determinations turn largely on observable "credibility," the trial court's judgment is entitled to great deference.  See *Witt*, 469 U.S. at 429 (holding that a finding of juror bias is a factual matter, reviewed as such under 28 U.S.C. § 2254).

As the Eleventh Circuit noted recently, the trial court has "substantial discretion in conducting [voir dire], and there are no set questions that must be asked." *United States v. Brown*, 441 F.3d 1330, 1356 n.11 (11th Cir. 2006) (citing *Witt*, 469 U.S. at 424).  The Court finds that in the instant case, the record clearly supports the trial court's decision. Trial counsel is not ineffective because his efforts to rehabilitate a prospective juror fail.

The trial court conducted an extensive and thorough voir dire of all prospective jurors, in which trial counsel actively participated. Based on the Court's own review of the record in this matter, there is no indication that trial counsel performed deficiently. The

Florida Supreme Court's rejection of this claim is not contrary to or an unreasonable

application of federal law.

**Personal Beliefs**

First, Finney argues that trial counsel was ineffective in failing to object when the

prosecutor injected his personal beliefs into the voir dire process.[14] In context, Finney's

claim is based on the underlined portion of the following excerpt from the trial transcript:

| | |
|---|---|
| Mr. Cox: | Does that – let me ask you this by stating it this way: Is that to say that if the jury convicted the defendant of murder in the first degree, are you saying that under no circumstances could you impose the death penalty? |
| Mr. Alter: | Under no circumstances could I impose the death penalty. |
| Mr. Cox: | Okay, all right.  Thank you very much and thank you for telling me that.  Okay.  I'll get back to a couple of you later on as well.  Who indicated that you're opposed to the death penalty as well?  And believe me, I'm not here to take issue with any of you.  I'm not here to argue with you about whether you should be.  You feel the way you do, and that's fine.  Okay.  We just need to know how you feel. |
| | Okay.  Now, on the other end of the spectrum with Mr. Alter, maybe some of you might say, "Okay.  Well, if a person is convicted of murder in the first degree, then I believe the death penalty can be imposed."  Okay?  Now some of you may have real strong feelings about capital punishment.  <u>Some of you may think, "Gee, it should be imposed almost every time there is a murder in the first degree."</u>  <u>And we're not going to take issue and argue with you about that.</u>  But Her Honor will instruct you later – and I'm not going over instructions with you right now.  But she'll give you instructions later. |
| | But one thing that is very important is that if Mr. Finney is convicted of murder in the first degree, that you can each promise Mr. Finney |

---

[14]As the trial court pointed out in its order denying Finney's Rule 3.850 motion, post-conviction counsel acknowledged during the *Huff* hearing that "his complaint about the prosecutor interjecting his personal feelings was procedurally barred." Dkt. 28, Ex. C3, Vol. III at PC-R. 343.  *See also Finney* 631 So.2d at 657. A review of the transcript reveals, however, that while post-conviction counsel acknowledged that the underlying claim was procedurally defaulted, he did not concede that the ineffectiveness of counsel for failing to object to the prosecutor's comments was procedurally barred. " Dkt. 28, Ex. C2, Vol. II at PC-R. 283; 285.

in all fairness to him, you know, that you can keep an open mind, okay, because like I said, it's a whole completely different hearing. You will probably hear new evidence, new testimony and new argument by counsel. Okay. And you will have, you know, all of that additional evidence and testimony to work on.

Can you promise Mr. Finney and the People that regardless if you're a person who believes strongly in the death penalty or just believes in it moderately, can you all promise us that you will still consider that evidence and not make a decision until you have heard everything until the very end?

Dkt. 28, Ex. A2, Vol. II at Tr. 110-11.

Finney argues that this statement is a personal commentary that the prosecutor believes every first-degree murder deserves the death penalty and was highly prejudicial to Finney because it sent a message to the ultimate panel that death was the only acceptable verdict. According to Finney, trial counsel was ineffective for failing to object to Attorney Cox's statement and move for a mistrial.

Finney's strained reading of the transcript is not persuasive. When taken in context, it is clear that Attorney Cox was merely encouraging the veniremen to express their positions on the death penalty without fear that their personal beliefs would be challenged. Moreover, having failed to demonstrate bias or prejudice of any seated juror, Finney has failed to meet the prejudice prong of the *Strickland* test.

Next, Finney asserts that trial counsel was ineffective for failing to object and move for a mistrial during the penalty phase closing argument when Attorney Cox described the taking of a life for pecuniary gain as "disgusting." Specifically, Finney objects to the underlined portion of the following excerpt from the transcript:

Attorney Cox:   Her Honor is going to tell you about the aggravating circumstances that you can consider in this case. She's going to tell you that one of the aggravating circumstances you can consider is that the murder was done for pecuniary gain, for financial benefit. And your verdict finding him guilty of armed robbery, you found beyond a

reasonable doubt that he did this for financial gain.  He did this because he wanted money.

There is nothing more despicable than taking a human life for money.  And what's the value of Sandra Sutherland's life?  What's the value for the killing of Sandra Sutherland by this man?  Thirty dollars and the contents of whatever came out of that wallet.  Thirty dollars to pawn that VCR and  whatever came out of that wallet and the purse that was ransacked.  That is the value of Sandra Sutherland's life to Charles Finney.  <u>That is disgusting</u>, and that is certainly aggravating.

Another aggravating factor you can consider is whether or not the defendant has ever been convicted of a prior crime where the threat or the use of force was involved.  And that is where Judy Baker enters.  You see, you can consider this to figure out what kind of person are we dealing with.  We know what Miss Gallimore and them say.  But what kind of person are we dealing with?

. . . .

We also know about the weapon that was used.  You see, the weapon of choice by Charles Finney in these two situations was a knife.  And we also know as well in Judy Baker's case that the value for the rape of Judy Baker was fifty-five dollars, for money.  That is disgusting.

Trial counsel:  Your Honor, I object at this time.  Can we approach the bench?

Court:  Sure.

Trial counsel:  I allowed it once, and I can't allow it the second time.  He is giving this jury his personal views, which is contrary to what closing arguments are supposed to be.  As to his own personal views about it being disgusting, he can't do that.  That is improper prosecutorial closing, and he knows it.

Dkt. 28, Ex. A6, Vol. VI at Tr. 900-02.

As this exchange demonstrates, the first time Attorney Cox used the word "disgusting," trial counsel made a decision not to interrupt the State's closing argument with an objection. When the prosecutor used the phrase a second time a few minutes later to describe the Baker rape and robbery, trial counsel decided that an objection to the

prosecutor's characterization of the offenses as "disgusting" was necessary. Respondent argues that Finney has failed to establish that further objection was constitutionally compelled. The Court agrees.

Recognizing that counsel has wide latitude in deciding how best to represent a client, the Supreme court held that there is a strong presumption that trial counsel's actions were the result of sound trial strategy. *See Strickland*, 466 U.S. at 689. "Counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken 'might be considered sound trial strategy.'" *Chandler,* 218 F.3d at 1314 (quoting *Darden v. Wainwright,* 477 U.S. 168 (1986)). If the record is incomplete or unclear about counsel's actions, then it is presumed that counsel exercised reasonable professional judgment. *See Chandler,* 218 F.3d at 1314-15 n. 15. Thus, the presumption afforded counsel's performance "is not . . . that the particular defense lawyer in reality focused on and, then, deliberately decided to do or not to do a specific act." *Id.* Rather, the presumption is "that what the particular defense lawyer did at trial . . . were acts that some reasonable lawyer might do." *Id.*

In order to show that counsel's performance was unreasonable, the petitioner must establish that no competent counsel would have taken the action that his counsel did take. *See Holladay v. Hale*, 209 F.3d 1243, 1253 n.6 (11th Cir. 2000) ("A tactical decision is ineffective only 'if it was so patently unreasonable that no competent attorney would have chosen it.'") (quoting *Adams v. Wainwright*, 709 F. 2d 1443, 1445 (11th Cir. 1983)); *Waters*, 46 F.3d at 1512 (stating that the court's inquiry was whether some reasonable attorney could have acted as the petitioner's attorneys did in his trial).

It is entirely reasonable for trial counsel to choose to forego an objection during closing argument rather than focus the jury's attention on the remark. *Julius v. Johnson*,

840 F.2d 1533, 1538-39 (11th Cir. 1988).  Finney has failed to overcome the strong presumption that trial counsel's decision to forego objecting the first time the prosecutor used the word "disgusting" falls within wide range of reasonable professional assistance.

Finney has not demonstrated that the state court's rejection of this claim is contrary to or an unreasonable application of Supreme Court precedent.  The claim is, therefore, subject to denial.

**Mitigation**

Finney argues that trial counsel was ineffective during the penalty phase of his trial in failing to present what Finney characterizes as "an *abundance* of mitigation evidence and evidence which would have neutralized the aggravating circumstances" (Dkt. 23 at 79 (emphasis added)).[15]  Finney complains that no evidence was presented of his birth to a teenage mother; the battering he suffered at the hands of an abusive, alcoholic father who later died of cirrhosis of the liver; his "long-term drug problem;" his history of fainting spells during his adolescence due to anemia; the deaths of two close friends which occurred during Finney's teen years, one of whom was Finney's cousin; an injury Finney suffered at the age of 17 when he was shot in the abdomen by a cousin; and head injuries he

---

[15]Finney relies on *Lockett* and *Eddings* in support of his argument that trial counsel was ineffective for failing to present "an abundance of mitigation evidence."  These cases do not support Finney's cause. Under the Eighth and Fourteenth Amendments, a sentencing body "may not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Eddings v. Oklahoma*, 455 U.S. 104, 113-14 (1982) *Lockett v. Ohio*, 438 U.S. 586, 604 (1978).  In *Lockett* and *Eddings,* the sentencer was precluded from even considering certain types of mitigating evidence.  As the Supreme Court explained in *Johnson v. Texas*, "'*Lockett* and its progeny stand only for the proposition that a State may not cut off in an absolute manner the presentation of mitigating evidence, either by statute or judicial instruction, or by limiting the inquiries to which it is relevant so severely that the evidence could never be part of the sentencing decision at all." 509 U.S. 350, 361 (1993) (quoting *McKoy v. North Carolina*, 494 U.S. 433, 456 (1990) (Kennedy, J., concurring)).  In the instant case, the trial court did not preclude Finney from presenting mitigating factors, and it is clear from the record that the trial court took those factors into consideration in the weighing process.

suffered as an adolescent.  Acknowledging that trial counsel presented mitigating evidence during the guilt and penalty phase of the trial, Finney complains that it was all "good guy" information (Dkt. 23 at 69).

Finney raised his ineffective assistance of counsel claims in his Rule 3.850 motion. In its order affirming the trial court's rejection of the motion, the Florida Supreme Court held:

> Defense counsel admits that some of the mitigation evidence is cumulative. There are no specific examples of mitigation evidence pled, nor is there an affidavit from defendant Finney's mental health expert at trial that he has reviewed the mitigation evidence and that his testimony would have been different than at trial. Defendant Finney has failed to establish how any failure on the part of his counsel has prejudiced him.

> Mr. Finney has not alleged any specific facts regarding what mitigating evidence exists or what the alleged witnesses could testify to. The Florida Supreme Court in *LeCroy v. Dugger*, 727 So.2d 236 (Fla. 1998), addressed this issue:

>> A motion for post conviction relief can be denied without an evidentiary hearing when the motion and record conclusively demonstrate that the movant is entitled to no relief. A defendant may not simply file a motion for post conviction relief containing conclusory allegations that his or her trial counsel was ineffective and then expect to receive an evidentiary hearing. The defendant must allege specific facts that, when considering the totality of the circumstances, are not conclusively rebutted on the record and demonstrate deficiency on the part of counsel which is detrimental to the defendant.

> As in *LeCroy*, defendant Finney failed to make even a prima facie showing of prejudice which would warrant an evidentiary hearing. . . .

> F. The sentencing court's inability to find and apply various mitigating circumstances because ineffective presentation of mitigating evidence violates the Eighth Amendment.

> Defendant Finney complains that mitigation evidence of his abusive childhood and other matters were not weighed by the sentencing court. To the contrary, the trial court's sentencing order of November 10, 1992, and the transcript state:

Dr. Gamache testified that the defendant came from a deprived childhood with an alcoholic father whom he barely knew and how he left the family when the defendant was merely three years old. The defendant was extremely poor and had to fend for himself for most of his needs. This testimony was not seriously impeached by the prosecution and the Court gave this some weight.

Subissue F is without merit.

. . . .

Finney now alleges that his prior postconviction counsel should have asserted that trial counsel failed to present specific witnesses who "could have strengthened the story of appellant's upbringing, childhood and teen years through independent sources, perhaps more persuasively than the appellant himself." Finney contends that these witnesses could have attested to the following: as a child, Finney fell from his rocking chair and hit his head; as a child, he was anemic and often fainted; he had trouble reading and was stubborn in school; his best friend drowned; his cousin shot him in the abdomen; he witnessed the hit-and-run death of a cousin; he developed a drug problem in the military and entered a rehabilitation program. We disagree.

The record shows that trial counsel presented substantial mitigating evidence during the penalty phase. Finney's common law wife, Tammy Gallimore, testified at length about his positive character traits, describing him as gentle, kind, and caring and relating how he had supported her emotionally and financially as she pursued her education and as she progressed through the pregnancy and birth of their daughter. She testified that he was a hard worker, taking a second job when they lived in Georgia in order to make voluntary child support payments to his ex-wife and again when they lived in Florida to help their own financial situation. She described his devotion to their daughter, even throughout his incarceration, and extensively discussed his artistic talents. She noted that everyone liked Finney and that he always had stable employment and helped around the house.

Joseph Williams also testified during the penalty phase. He was a friend of Finney's who helped him get a job at University Community Hospital shortly after Finney moved to Florida. Williams testified that he loved Finney like a son, that Williams's two sons, ex-wife, and mother all liked Finney. He said that Finney was honest, appreciative, completely trustworthy, very spiritual, and crazy about his (*i.e.*, Finney's) family. He testified that Finney had been honorably discharged from the military and that Finney was "the best working man" Williams had ever met; he would do anything that anyone asked of him and was a dependable, enthusiastic employee.

Dr. Michael Gamache, a forensic psychologist, also testified on Finney's behalf during the penalty phase. He stated that he conducted two clinical examinations of Finney, spending a total of five and one-half hours with him. He described Finney's background in detail. Finney was born in Macon, Georgia, where his family lived at or near the poverty level. His mother was a dietitian; his father was a carpenter. His father was a very heavy drinker; he abandoned the family when Finney was about three years old. Finney was the youngest of three children. Gamache described Finney as an average or better student who got along well with teachers and other students. He noted that Finney enlisted in the Army after graduation, serving two years in the First Airborne Ranger Division before being honorably discharged. Upon returning to Macon, he used his military benefits to pursue his educational and career goals. He had gotten married while in the military, and a son was born in 1973, while Finney still was in the Army. In Macon, Finney maintained stable employment and provided for his family, ultimately landing a "plum" job at a power plant that had excellent job security and benefits. He and his wife were both religious, but they grew apart and started losing interest in each other; they were separated and then divorced. Finney later met Tammy and they became close friends; he was willing to give up his secure job to come with her to Florida, where she wanted to continue her education.

Dr. Gamache noted that Finney had been a very good employee his entire adult life; there never was any difficulty or dissatisfaction with his work habits. Gamache had spoken with Tammy at length and she had corroborated Finney's description of the ending of his first marriage and the strength of their relationship, as well as Finney's very close bond with his daughter. He noted that Finney, Tammy, and their daughter Shannon were a very close, loving family, and that the family relationships were very strong and positive, without any serious problems.

The record shows that the mitigating evidence that was presented during the penalty phase was sufficiently compelling to convince the circuit court to find and give weight to five nonstatutory mitigating factors: Finney's contribution to the community and society as evidenced by his exemplary work and military history; his positive character traits; his ability to adjust well to prison life and his excellent potential for rehabilitation; his deprived childhood; and his continued contribution to his family through the bonding and love he showed for this daughter during frequent visitations and contacts.

In light of the mitigating testimony that was presented at trial, and considering the aggravated nature of the murder in this case, we conclude that the newly proffered evidence is not sufficiently compelling to have changed the outcome of the penalty phase proceeding. As noted above, there was testimony presented during the penalty phase concerning Finney's military service, which took place in 1972-74, and the fact that he may have used drugs nearly twenty years before the murder. We do not find

this sufficiently compelling to warrant relief at this stage of the proceedings. Nor is the fact that he may have experienced several childhood falls, bumps, and traumas. Accordingly, we find no merit to this claim.

*Finney*, 631 So.2d at 658-61.[16]

Finney contends that had trial counsel investigated his background and provided Dr. Gamache adequate information for a valid and comprehensive mental health evaluation, it would have revealed other mitigating factors. Despite having spent more than five hours with Finney interviewing and testing him, Dr. Gamache was, Finney urges, unable to learn the truth about him. None of the information Finney proffers regarding his personal history falls within the category of "newly discovered" information. Finney does not disclose why he failed to provide Dr. Gamache this information.

In support of his argument that trial counsel was ineffective for failing to present sufficient evidence of mitigating factors to outweigh the aggravating factors, Finney argues that trial counsel should have presented testimony by his half-sister, Katherine Richardson, and four of his cousins, Billy Stubbs, Jamie Wesley, Joyce Wesley, and Lynn Wesley (Dkt. 23 at 72). According to Finney, these family members could have provided the jury "a different picture" of him.

Finney has not presented any statements from the purported "witnesses" in support of this claim or otherwise established their availability to testify at trial. Assuming that the testimony these witnesses would have presented relates to incidents he references in his petition, this Court agrees with the Florida Supreme Court that Finney fails to explain how he was prejudiced by this information not having been presented to the jury.

---

[16]Although Finney's ineffective assistance of post-conviction counsel does not provide a basis for relief under § 2254, because the Florida Supreme Court's discussion of that claim includes a discussion of trial counsel's performance during the penalty phase of Finney's trial, the text of its decision on that claim is included here.

Citing *Hardwick*,[17] Finney posits that "psychiatric evidence, in particular can be particularly persuasive in terms of mitigation and the refutation of aggravation." Finney fails to present any facts which support an inference that a basis existed for trial counsel to secure a psychiatric evaluation of him.  An applicant for post-conviction relief on the basis of ineffective assistance of counsel must plead facts showing both a constitutionally deficient performance on counsel's part and resulting prejudice. *Strickland*, 466 U.S. at 687-89. *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991). Finney has not presented any evidence that he was ever diagnosed with any mental health problems or otherwise provided a basis for the Court to conclude that he displayed any evidence of mental problems which should have alerted trial counsel that there was a need for further investigation into Finney's mental health. The Court cannot conjure up facts to support Finney's claim, nor is it the Court's role to serve as an investigator for Finney.

Trial counsel ensured that Finney received an appropriate examination from a competent clinical forensic psychologist – Dr. Michael Gamache – who assisted in the evaluation, preparation, and presentation of Finney's defense. "[C]ounsel is not required to seek an independent evaluation when the defendant does not display strong evidence of mental problems." *Holladay v. Haley*, 209 F.3d 1243, 1250 (11th Cir. 2000).

As to Finney's assertions regarding allegations of physical abuse by his alcoholic father, Finney has again failed to carry the burden of providing a basis for the Court to

---

[17] *Hardwick v. Crosby*, 320 F.3d 1127, 1164 (11th Cir. 2003). Noting that trial counsel and Hardwick were at odds on the presentation and questioning of witnesses, the Eleventh Circuit concluded that trial counsel "appear[ed] to have given up on defending Hardwick and seemingly expended no effort, either in presentation of mitigating evidence or in understanding mitigation law, to prevent Hardwick's receiving the death penalty.  The court held that "[m]itigating evidence, *when available*, is appropriate in every case where the defendant is placed in jeopardy of receiving the death penalty," *id.* at 1163, finding that "failure to present mitigation evidence as to a defendant's family background or alcohol and drug abuse at the penalty phase of a capital case constitutes ineffective assistance of counsel, particularly when defense counsel "was aware of [petitioner's] past and knew that mitigation was his client's sole defense."  *Id.* at 1164.

conclude trial counsel should have known about the abuse Finney allegedly suffered, a prerequisite to finding that trial counsel was ineffective for failing to present the information as a mitigation factor. The Eleventh Circuit has recognized that "[e]specially when it comes to childhood abuse, '[i]nformation supplied by a petitioner is extremely important in determining whether a lawyer's performance is constitutionally adequate.'"*Callahan v. Campbell*, 427 F.3d 897, 934 (11th Cir. 2005) (quoting *Van Poyck v. Florida Dep't of Corrs.*, 290 F.3d 1318, 1325 (11th Cir. 2002)). "An attorney does not render ineffective assistance by failing to discover and develop evidence of childhood abuse that his client does not mention to him." *Williams v. Head*, 185 F.3d 1223, 1237 (11th Cir. 1999).

In the present case, it was reasonable for trial counsel not to investigate the possibility Finney was abused as a child. First and foremost, Finney has presented no evidence that he told trial counsel about the abuse or that trial counsel failed to ask him whether he had been abused.  According to Dr. Gamache's testimony, Finney informed Dr. Gamache that his father had a problem with alcohol and discussed the effect of his father's desertion on the family and its impact on Finney's childhood, but alcohol abuse, in and of itself, is not an indication of physical abuse.

Finney analogizes the failure of trial counsel to discover evidence of his abuse to the failures in *Williams v. Taylor*, 529 U.S. at 395, and *Wiggins v. Smith*, 539 U.S. 510 (2003), but he overlooks a glaring difference -- the evidence of abuse in *Williams* and *Wiggins* was documented extensively in public records. *See Wiggins*, 539 U.S. at 523-25 (in addition to the PSI, in which Wiggins described his youth as "disgusting," social services records revealed "[Wiggins'] mother was a chronic alcoholic; Wiggins was shuttled from foster home to foster home and displayed some emotional difficulties while there; he had frequent, lengthy absences from school; and, on at least one occasion, his

mother left him and his siblings alone for days without food."); *Williams*, 529 U.S. at 395

(an investigation "would have uncovered extensive records graphically describing Williams'

nightmarish childhood.").   Here, Finney has not demonstrated that any documentation

existed evidencing that Finney was "abused" in childhood or otherwise. For all of the

aforementioned reasons, trial counsel acted reasonably in not investigating further the

possibility of Finney suffering abuse as a child.

    *Strickland* teaches that in reviewing a claim of ineffective assistance of counsel,

courts should "evaluate [counsel's] conduct from counsel's perspective at the time [of

trial]." 466 U.S. at 689. Finney fails to point to anything in the record that would put trial

counsel on notice that further investigation was warranted. See *Strickland,* 466 U.S. at

690-91 (counsel may make reasonable decision that makes particular investigations

unnecessary).   *Foster v. Dugger,* 823 F.2d 402, 407 (11th Cir. 1987) (where counsel has

no cause to suspect that additional medical evidence would lead him to reassess his

conclusion, counsel's decision not to pursue additional medical evidence was reasonable).

    As to Finney's argument that trial counsel should have retained a "competent

mental health expert to testify to the existence of statutory mitigating circumstances,"[18]

Finney fails to identify any "statutory" mitigator that would apply in his case. Having

---

[18]Under Florida law, there are seven mitigating circumstances which the jury and trial court must consider in deciding whether the death penalty is appropriate:

    (a) [t]he defendant has no significant history of prior criminal activity; (b) [t]he capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance; (c) [t]he victim was a participant in the defendant's conduct or consented to the act; (d) [t]he defendant was an accomplice in the capital felony committed by another person and his or her participation was relatively minor; (e) [t]he defendant acted under extreme duress or under the substantial domination of another person; (f) [t]he capacity of the defendant to appreciate the criminality of his or her conduct or to conform his or her conduct to the requirements of law was substantially impaired; [and] (g) [t]he age of the defendant at the time of the crime.

Fla. Stat. § 921.141(6).

reviewed Florida's death statute in light of Finney's claim, the Court concludes that the only two statutory mitigators which were not excluded by the facts of the case were: "(b) [t]he capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance; . . . and (f) [t]he capacity of the defendant to appreciate the criminality of his . . . conduct or to conform his . . . conduct to the requirements of law was substantially impaired." Fla. Stat. § 921.141(6). Nothing in the record supports an inference that the former was applicable, and testimony by Dr. Gamache negates the latter. Because Finney has never submitted any documentation or a proffer reflecting what such an expert might have said, it is impossible to establish that defense counsel was ineffective for failing to obtain an expert.

There is nothing in the record that suggests there was any basis for trial counsel to question Dr. Gamache's findings, made after administering the Minnesota Multiphasic Personality Inventory and the Hare Psychopathy Inventory and lengthy interviews with Finney, that he had no psychological symptoms and, in Dr. Gamache's opinion, was legally sane at the time the murder occurred (Dkt. 28, Ex. A6, Vol. VI at Tr. 884, 886). "[C]ounsel is not required to 'shop' for a psychiatrist who will testify in a particular way." *Elledge v. Dugger*, 832 F.2d 1439, 1447 n.17 (11th Cir. 1987), *cert denied*, 485 U.S. 1014 (1988).

As to his history of drug use, Finney does not allege that he, like the defendant in *Hardwick*, was so intoxicated when the killing occurred that he could not form specific intent to commit murder, 320 F.3d at 1161, or otherwise show how this information was relevant to his character or record or the circumstances of the offense such that it would have had an effect on the weighing process that resulted in his death sentence. A history of drug abuse could, to the contrary, weigh in favor of the death penalty.

A criminal defendant's Sixth Amendment right to counsel during a capital sentencing is violated where a defendant can establish both (1) that counsel rendered such inadequate legal assistance that the sentencing cannot be relied on as having produced a just result, and (2) that there is a reasonable probability that, absent the alleged errors, the sentencer would have concluded that the balance of aggravating and mitigating circumstances did not warrant death. *Strickland*, 466 U.S. at 686, 695. Elaborating on the first point, the Court emphasized:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Id*. at 689 (citations omitted). The Eleventh Circuit has repeatedly stated that "[n]o absolute duty exists to introduce mitigating or character evidence." *Chandler*, 218 F.3d at 1319. "Good advocacy requires 'winnowing out' some arguments, witnesses, evidence, and so on, to stress others." *Id.* In this case, it is apparent that trial counsel's strategy was to affirmatively present the best possible case in favor of a sentence other than death rather than attempt to justify or excuse the crime. To achieve this end, trial counsel emphasized the impact of an execution on Finney's immediate family, his prior positive contributions to the community, and other factors unconnected to the crime which trial counsel argued militated against his execution.  Trial counsel is not ineffective for failing to prevail on an argument.

As the Eleventh Circuit pointed out in *Hardwick*, "[w]hen a petitioner contends that the presentation of additional mitigating evidence would have changed the weighing process so that death is not warranted, 'we look at the mitigating circumstance evidence that was not presented, along with that which was, and consider the totality of it against the aggravating circumstances that were found.'" 320 F.3d at 1166 (citation omitted). *See also Callahan*, 427 F.3d at 934. Taken as a whole, the new mitigating evidence Finney proffers, weighed against the aggravating evidence, does not persuade this Court that Finney has shown a reasonable probability that the outcome of the sentencing proceeding would have been different had this information been presented to the jury.

Finally, Finney argues that Florida Supreme Court erred in failing to consider his ineffective assistance of counsel claims cumulatively, reviewing "the deficiencies as a whole and then, in light of the entire record, analyzing prejudice under the appropriate *Strickland* test." Dkt. 23 at 75. Finney contends that trial counsel's errors, when considered cumulatively, rendered his trial fundamentally unfair (Dkt. 23 at 75).

Because Finney has failed to establish that the violations he alleges were indeed errors, they cannot support a cumulative error claim. *See United States v. Murray*, 154 Fed.Appx. 740, 745-746 (11th Cir. 2005). Moreover, the Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief. Thus, it cannot be said that the judgment of the Florida courts is contrary to any Supreme Court decision so as to warrant relief under the AEDPA. Finney's arguments, which are inadequate individually, are no more adequate collectively.

The Florida courts did not misapply *Strickland* or any other relevant decision[19] in denying Finney's claim that trial counsel was ineffective in presenting mitigating evidence. Its disposition of Finney's claims was neither contrary to nor an unreasonable application of clearly established federal law. Nor was its decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d). Finney is not, therefore, entitled to relief  on this claim.

**GROUND EIGHT**

Finney raises three claims for relief in Ground Eight. The first two claims relate to the mitigating factors presented during the penalty phase of his trial.  The third claim relates to the Sixth Amendment right to a trial by jury premised on *Ring v. Arizona*.[20] For reasons discussed below, none of these claims provides a basis for relief under § 2254.

**Mitigating Circumstances**

In an effort to convince the jury to spare Finney's life, trial counsel presented evidence in five categories of nonstatutory mitigation: (1) his deprived childhood; (2) his contributions to his community and society; (3) his positive character traits; (4) his potential for rehabilitation and adjustment to prison; and (5) his strong bond with his daughter (Dkt. 28, Ex. A6, Vol. VI at Tr. 839-56; 859-69; 873-91).[21]  During a review of  proposed jury

---

[19]Finney asserts an unreasonable application of *Strickland*, but also mentions his rights pursuant to *Ake v. Oklahoma*, 470 U.S. 68 (1985). His allegations, as pled, are encompassed within *Strickland*, but not *Ake. See Bertolotti v. Dugger*, 883 F.2d 1503, 1510-11 (11th Cir. 1989) (discussing interplay between *Ake* and *Strickland*). Since Finney is attacking the actions of counsel rather than a trial court ruling curtailing mental health assistance, this claim is properly reviewed under *Strickland*.

[20]*Ring v. Arizona*, 537 U.S. 584 (2002) (reviewing a state prosecution where the trial judge determined the sentence, the Court held that a sentencing judge, sitting without a jury, [may not] find an aggravating circumstance necessary for imposition of the death penalty" because the aggravating factors are the "functional equivalent" of elements of the offense).

[21]Florida Statute § 921.141(6) lists seven mitigating circumstances which the jury and trial court must consider in deciding whether the death penalty is appropriate. The trial court in this case determined that none of these statutory mitigating factors existed with respect to Finney. *See* Dkt. 28, Ex. A-6, Vol. VI at

instructions, trial counsel argued that it would be highly prejudicial to Finney for the jury to take the instructions to the jury room during its deliberations and see specific aggravators but not see any specific mitigators.  Trial counsel further argued that using a "catch all" instruction would mislead the jurors to consider all of the mitigating evidence as a single mitigating factor, distorting the weighing process (Dkt. 28, Ex. A6, Vol. VI at Tr. 791).  The trial court rejected trial counsel's argument.

Citing *Lockett v. Ohio*, Finney argues that the trial court's failure to adequately instruct the jury on mitigating circumstances deprived him of an individualized sentencing determination, as required by the Eighth and Fourteenth Amendments and rendered the jury's death recommendation and the ensuing death sentence constitutionally unreliable. *Lockett v. Ohio*, 438 U.S. 586 (1978). Finney further contends the trial court's error was "compounded" by comments made by the prosecutor during closing argument Finney characterizes as "misleading" to the jury (Dkt. 23 at 82).

**Trial Court Error**

This claim was raised and rejected on direct appeal.  *Finney*, 660 So.2d at 684. Under Florida Supreme Court precedent, there is no requirement that the trial court give specific instructions on nonstatutory mitigating circumstances urged by the defendant. *See, e.g., Jones v. State*, 612 So.2d 1370, 1375 (Fla. 1992), *cert. denied*, 510 U.S. 836 (1993); *Robinson v. State*, 574 So.2d 108, 111 (Fla.), *cert. denied*, 502 U.S. 841 (1991).

Under the Eighth and Fourteenth Amendments, a sentencing body "may not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a

---

917-18. The trial court did find, however, several instances of mitigating conditions which were not listed in the statute, as discussed above.

basis for a sentence less than death." *Lockett v. Ohio*, 438 U.S. at 604.  It is not enough

"simply to allow the defendant to present mitigating evidence to the sentencer." *Penry v.*

*Lynaugh*, 492 U.S. 302, 319 (1989). To "ensure 'reliability in the determination that death

is the appropriate punishment in a specific case,'" the jury "must be able to consider and

give effect to any mitigating evidence relevant to a defendant's background, character, or

the circumstances of the crime." *Id.* at 328 (quoting *Woodson v. North Carolina*, 428 U.S.

280, 305 (1976)).  *Lockett* and its progeny merely require, however, that a defendant be

allowed to present all mitigating evidence and that the sentencer not be precluded from

considering this evidence.

To prevail on his claim that under *Lockett*, the trial court erred in instructing the jury

on the nonstatutory mitigating factors, Finney must establish by a preponderance of the

evidence either that the jury was instructed not to consider – and therefore could not

consider – nonstatutory mitigating evidence, or that the trial court limited itself solely to a

consideration of statutory factors in fashioning its sentence. As discussed above, trial

counsel did introduce evidence of nonstatutory mitigating aspects of his character, and

nothing in the record suggests that the trial court instructed the jury not to consider those

factors.  To the contrary, the trial court judge instructed the jury as follows:

> Your advisory sentence should be based upon the evidence you have heard
> while trying the guilt or innocence of the defendant and evidence that has
> been presented to you in these proceedings.
>
> If you find the aggravating circumstances do not justify the death penalty,
> your advisory sentence should be one of life imprisonment without possibility
> of parole for twenty-five years.  Should you find sufficient aggravating
> circumstances do exist, it will then be your duty to determine whether
> mitigating circumstances exist that outweigh the aggravating circumstances.
>
> Among the mitigating circumstances you may consider, if established by the
> evidence, are: any aspect of the defendant's character or record and any
> other circumstances of the offense. Each aggravating circumstance must be

established beyond reasonable doubt before it may be considered by you in arriving at your decision.

If one or more aggravating circumstances are established, you should consider all the evidence tending to establish one or more mitigating circumstances and give that evidence such weight as you feel it should receive in reaching your conclusion as to the sentence that should be imposed.

A mitigating circumstance need not be proved beyond a reasonable doubt by the defendant.  If you are reasonably convinced that a mitigating circumstance exists, you may consider it as established.

The sentence that you recommend to the Court must be based upon the facts as you find them from the evidence and the law.  You should weigh the aggravating circumstances against the mitigating circumstances, and you advisory sentence must be based on these considerations.

Dkt. 28, Ex. A6, Vol. VI at Tr. 917-19. The jury was at liberty to consider – in addition to the statutory factors – "any aspect" of Finney's character, based on any of the evidence the jury had seen either at the guilt or sentencing phase of the trial.  Clearly, the jury was not prevented from considering nonstatutory mitigating evidence. The Constitution requires only that the jury be permitted to consider such evidence. That it did not accept this evidence does not render the resulting advisory verdict of death unconstitutionally infirm. *Atkins v. Singletary*, 965 F.2d 952, 962 (11th Cir. 1992). Consideration of such factors is "sufficient to satisfy the dictates of the Eighth Amendment." *Blystone v. Pennsylvania*, 494 U.S. 299, 308 (1990).

Finney has not cited any Supreme Court or other federal precedent that was unreasonably applied or is contrary to the Florida Supreme Court's disposition of this claim. The Court concludes that this claim lacks merit.

**Prosecutor's Comments**

As to Finney's argument that the prosecutor's comments during closing argument misled the jury concerning what factors it could or could not consider in rendering its advisory verdict, Respondent acknowledges that this claim was raised as a subclaim in Ground Six of Finney's brief on direct appeal. A review of Finney's appellate brief confirms that the Florida Supreme Court was put on notice as to the federal nature of the claim in the brief.  While the Florida Supreme Court did not specifically address the merits of the claim in its decision, it implicitly rejected Finney's argument when it affirmed his convictions and sentences, stating that it "found no reversible error." The Court concludes, therefore, that the state court denied this claim without explication. *See  Wright v. Sec. of Dept. of Corrs.*, 278 F.3d 1245, 1255  (11th Cir. 2002) ("The statutory language [of § 2254(d)] focuses on the result, not on the reasoning that led to the result, and nothing in that language requires the state court adjudication that has resulted in a decision to be accompanied by an opinion that explains the state court's rationale" (citation omitted)); *Koetting v. Thompson*, 995 F.2d 37, 40 (5th Cir. 1993) (rejecting habeas petitioner's argument that the failure of the court to make specific record references or to discuss the issues specifically is indicative of a failure to conduct the appropriate review of his claims, the circuit court held that, with no evidence to the contrary, "the Court will 'assume that the district court did its statutorily commanded duty in the absence of evidence to the contrary'" (citation omitted)).

The record does not support finding that the comments about which Finney complains were improper.  Taken in context, Finney objects to the underlined portion of the following excerpts from the transcript:

Her Honor is going to read you some instructions in a few moments, and she's going to talk to you about the burden of proof in this case. And the burden of proof in this case remains the same as to the State of Florida. And I tell you, follow the law in all fairness to Charles Finney. The burden of proof remains beyond a reasonable doubt that we have to prove to you the aggravating circumstances.

As to the Defense, you do not hold them to that same standard. If you are reasonably convinced that a mitigating factor exists, give it to him. Reasonably convinced is not beyond a reasonable doubt. And in all fairness to Mr. Finney, give him that. We tell you, give him that. You must.

Dkt. 28, Ex. A6, Vol. VI at Tr. 896-97.

Now, I'm going to speak with you about the mitigating and aggravating factors in a moment, because, you see, as we spoke about in voir dire, there are certain things, <u>there is a certain list of things that if these certain circumstances exist, the State can come to you and urge you to sentence the defendant to death. The Defense is only limited by their own creativity. They can argue anything.</u> This was their day in court. This was Charles Finney's day. You didn't hear Ms. Vogel or myself say anything, because that is the way it should be. His witnesses should get up there and tell you whatever they want to, and they did.

<u>And folks, we haven't heard the first thing that mitigates this murder. Nothing can mitigate this murder.</u> Some of the things we heard today in mitigation, – <u>and I anticipate Mr. Escobar may pop out some of these to you</u> – whether the defendant has a good work history. He's been honorably discharged from the service. Folks, there's a lot of people that work well, there's a lot of people who have been honorably discharged, and they don't go out and tie people up and stab them thirteen times. <u>This is not mitigating.</u> That is what society expects, not this.

We heard from a friend of his and his girl friend, Miss Gallimore, and these people love him and they're his friends. Everybody has people – most everybody has people who love them and they have friends. And they came up and they testified to you about all the good things he's done for them and the good things he's done for a few people that he's related to or that they know. This is why they're his friend. Everyone has friends. <u>This is not mitigating to this murder.</u>

Id. at Tr. 897-98.

<u>And I anticipate one more mitigator as well will be that Charles Finney will do well in the prison system. But, folks, what does that have to do with this murder?</u> People ask you today, we have concentrated a lot on Charles Finney, and it's hard. But let's remember why we're here. You can't forget

> Sandra Sutherland. She didn't have to die. She certainly didn't have to die the way she did.
>
> You see, the reason we're here is because of Charles Finney. We're not here because of anyone else. <u>We're not here because of Mr. Williams. We're not here because of Miss Gallimore. We're not here because of Dr. Gamache</u>. We're here because of Charles Finney. Charles Finney is responsible for the death of Sandra Sutherland, but he's also responsible for his own death, because he committed this crime. He forfeited his right to live. That is why we're here.

*Id.* at Tr. 899-900. Finney contends that the prosecutor's argument to the jury was designed to persuade the jurors that the evidence presented on his behalf was "merely the produc[t] of [trial] counsel's unlimited 'creativity'" rather than legitimate mitigating circumstances (Dkt. 23 at 86).

In considering a claim that the prosecutor's comments to the jury during closing argument violated the petitioner's right to a fair trial, federal habeas corpus review is "the narrow one of due process, and not the broad exercise of supervisory power." *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974); *Romaine v. Head*, 253 F.3d 1349, 1365-66 (11th Cir. 2001). Federal case law regarding closing statements is the same as Florida law, *see e.g., Darden v. Wainwright*, 477 U.S. 168, 179-183 (1986) (quoting *Donnelly,* 416 U.S. at 643). To amount to a constitutional violation, the prosecutor's remarks must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly*, 416 at 644. Such an egregious event did not befall Finney.

Closing argument is intended to "assist the jury in analyzing, evaluating and applying the evidence." *United States v. Pearson*, 746 F.2d 787, 796 (11th Cir. 1984). While a prosecutor may not go beyond the evidence before the jury, he is not limited to a bare recitation of the facts; he may "comment" on the evidence, *id.* at 796, and "state his

contention as to the conclusions the jury should draw from the evidence." *United States v. Johns*, 734 F.2d 657, 663 (11th Cir. 1984).

The first step in analyzing Finney's sentence stage prosecutorial argument claim is to determine if the argument was improper, because no matter how outcome-determinative it is, "a proper argument cannot render the proceedings fundamentally unfair and therefore cannot be the basis for a constitutional violation." *Romaine*, 253 F.3d at 1366 (citing *Brooks v Kemp*, 762 F.2d 1383, 1403 (11th Cir. 1985) (en banc) ("A permissible argument, no matter how 'prejudicial' or 'persuasive,' can never be unconstitutional.").  In the present case, the prosecutor did not go beyond the evidence or misstate the law or the facts regarding the evidence in his argument to the jury.  The Court concludes that taken in context, the prosecutor's comments were not improper.

Finney bears the burden of establishing that the state court's rejection of this claim is contrary to or an unreasonable application of federal law or an unreasonable application of the law to the facts.  *See* 28 U.S.C. § 2254(d).  *See also Romine*, 253 F.3d at 1357. He has not carried this burden.

### *Ring v. Arizona*

Finally, Finney argues the rule announced in *Ring v. Arizona,* 536 U.S. 584, 589 (2002), that "[c]apital defendants . . . are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment" invalidates key aspects of Florida's capital sentencing statute and requires that his death sentence be vacated. This claim, which is wholly dependent upon the retroactive application of *Ring*, is foreclosed by the United States Supreme Court holding in *Schriro v. Summerlin,* 542 U.S. 348, 353 (2004), that *Ring* announced a procedural rather than a substantive rule of

law, and, therefore it had no retroactive application to death penalty cases already final on direct review. *See also Turner v. Crosby*, 339 F.3d 1247, 1285 (11th Cir. 2003).

As discussed above, Finney's convictions and sentences were affirmed by the Florida Supreme Court on January 20, 1995, and his motion for rehearing was denied on September 18, 1995. *See Finney v. State*, 660 So. 2d 674 (Fla. 1995). His convictions became final when his petition for certiorari review in the United States Supreme Court was denied on January 22, 1996. *See Finney v. State*, 516 U.S. 1096 (1996). Because at the time *Ring* was announced, Finney's case was final, he is entitled to no *Ring* relief.

**GROUND NINE**

As discussed above, the trial court judge found three aggravating factors: (1) Finney previously had been convicted of a violent felony; (2) the murder was committed for pecuniary gain; and (3) the murder was especially heinous, atrocious or cruel. Finney argues that the trial court erred in giving an instruction on a prior violent felony conviction because the offense of conviction in the Baker case occurred after the Sutherland homicide; that the evidence failed to prove that the Sutherland homicide was committed for pecuniary gain, and the evidence did not support finding beyond a reasonable doubt that the murder was heinous, atrocious, or cruel (Dkt. 23 at 98-99). None of these claims have merit.

**Prior Violent Felony Conviction**

At the beginning of the penalty phase, the trial court took judicial notice of Finney's felony convictions and instructed the jury that "[o]n July 20, 1992, Charles Finney was convicted by a jury of kidnaping, robbery with a weapon and sexual battery with the threat of use of great force. The victim was Judy Baker" (Dkt. 28, Exs. A1, Vol. I at R. 97; A6, Vol. VI at Tr. 798; 818-19). Finney asserts that the Baker conviction does not qualify as

a statutory aggravating factor because the offense of conviction occurred subsequent to the Sutherland homicide. This is not the claim Finney raised in state court.

On direct appeal, Finney argued that the Baker case should not have been used as an aggravator because it was pending on appeal.  However, by the time the Florida Supreme Court addressed the claim, the Baker case had been affirmed on appeal,[22] mooting his claim for relief. *Finney*, 660 So. 2d 684-85.

Having failed to exhaust his state court remedies, Finney is only entitled to federal habeas relief if he establishes that there is an "absence of available state corrective process" or that "circumstances exist that render such process ineffective to protect [his] rights."  28 U.S.C. §2254(b)(1)(B).  Finney has failed to make this showing. Notably, Finney did not assert in his petition for state habeas relief that appellate counsel was ineffective for failing to challenge the use of the Baker case as a statutory aggravating factor because the offenses occurred after the murder, *see* Dkt. 28, Ex. C7. Because Finney failed to exhaust his state court remedies and he has not shown cause and prejudice or manifest injustice to overcome the procedural default, *see supra*, n.10,  this claim is procedurally barred.[23]

---

[22]*Finney v. State,* 645 So.2d 465 (Fla. 2d DCA 1994).

[23]Were this claim properly exhausted, the Court would still be precluded from granting Finney the relief he seeks. Under Florida law, even contemporaneous convictions for crimes against multiple victims support finding the prior violent felony conviction in aggravation in a capital case. *See Zeigler v. State*, 580 So.2d 127, 129 (Fla.), *cert. denied*, 502 U.S. 946 (1991). Moreover, evidence of a defendant's prior conviction for a crime punishable by a sentence of more than one year is admissible even though the matter is pending on appeal. *See* Fla. Stat. § 90.610(1)-(2) (1979).  Finney does not dispute the existence of the prior violent felony conviction or cite any Supreme Court decision holding that a conviction for a crime committed subsequent to the charged offense cannot be used as an aggravating factor in the penalty phase of a capital case.

**Pecuniary Gain**

Finney challenges the applicability of the pecuniary gain aggravating factor.  When the victim's body was found lying on her bed, her bedroom had been ransacked, a jewelry box was missing, and the contents of her purse had been dumped and strewn over the floor. Finney acknowledges that he pawned the victim's VCR, asserting that he found the VCR near a dumpster. The jury rejected Finney's explanation when it found him guilty of robbery.

In rejecting this claim on direct appeal, the Florida Supreme Court found:

> Similarly, we reject Finney's contention that there was insufficient evidence to support the trial court's finding that the murder was committed for pecuniary gain. § 921.141(5)(f). In order to establish this aggravating factor, the State must prove beyond a reasonable doubt that the murder was motivated, at least in part, by a desire to obtain money, property, or other financial gain. *See Clark v. State*, 609 So.2d 513, 515 (Fla. 1992); *Peek v. State*, 395 So.2d 492, 499 (Fla. 1980), *cert. denied*, 451 U.S. 964, 101 S.Ct. 2036, 68 L.Ed.2d 342 (1981). The fact that Finney pawned the victim's VCR shortly after the murder, along with the evidence that Ms. Sutherland's jewelry box was missing and the contents of her purse had been dumped on the floor, supports the finding that the murder was committed for pecuniary gain.

Finney, 660 So.2d at 680.  Thus, the aggravating factor that the murder was committed for pecuniary gain was affirmed by the Florida Supreme Court and must be given deference under § 2254(e). To prevail on this claim, Finney must rebut the trial court's finding by clear and convincing evidence, a burden his has not carried.  Finney has not demonstrated that the Florida courts' disposition of this claim was contrary to, or constituted an unreasonable application of, governing precedent of the Supreme Court of the United States. This claim is without merit.

**Heinous, Atrocious or Cruel**

The trial court found that the murder of the victim was especially heinous, atrocious, or cruel – one of the seven aggravating factors required for a sentence of death under Florida Statute § 921.141(5).   Finney contends that there was insufficient evidence to support finding that the murder was heinous, atrocious, or cruel because the State did not adduce sufficient evidence to establish that: (a) the victim was conscious at the time of her death; (b) the victim was aware she was about to die; and (c) Finney intended to inflict torture or prolonged suffering on the victim.   Thus, Finney reasons that the trial court erred in instructing the jury on this issue. On direct appeal, the Florida Supreme Court rejected this argument, finding:

> Finney's challenge to the heinous, atrocious or cruel aggravating factor also is without merit. There was testimony that the victim was bound, gagged and stabbed thirteen times in the back. According to the medical examiner, the victim was alive throughout the attack and ultimately died from drowning in her own blood. While the medical examiner could not say how long she lived, he made it clear that the victim was conscious and able to feel at least the first few stab wounds. This Court has consistently upheld findings of heinous, atrocious or cruel where the victim was repeatedly stabbed. *See, e.g., Pittman v. State*, 646 So.2d 167 (Fla. 1994); *Atwater v. State*, 626 So.2d 1325 (Fla. 1993), *cert. denied*, 511 U.S. 1046, 114 S.Ct. 1578, 128 L.Ed.2d 221 (1994); *Nibert v. State*, 508 So.2d 1 (Fla. 1987); *Lusk v. State*, 446 So.2d 1038 (Fla.), *cert. denied*, 469 U.S. 873, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984).

> Finally, we have compared this case to other death penalty cases and find that death is proportionately warranted here. *Cf. Hudson v. State*, 538 So.2d 829 (Fla.) (death appropriate for defendant who entered ex-girlfriend's home armed with a knife and stabbed girlfriend's roommate to death, where court found previous conviction of a violent felony and committed during an armed burglary in aggravation and under extreme mental or emotional disturbance, impaired capacity to conform to requirements of law, and defendant's age in mitigation), *cert. denied*, 493 U.S. 875, 110 S.Ct. 212, 107 L.Ed.2d 165 (1989).

*Finney v. State*, 660 So.2d at 685

According to the Florida Supreme Court, a murder may fit within the heinous, atrocious and cruel aggravator "if it exhibits a desire to inflict a high degree of pain, or an utter indifference to or enjoyment of the suffering of another. . . . When evaluating the evidence, the trial court may consider the victim's fear and emotional strain as contributing to the heinous nature of the murder. . . ." *Cole v. State*, 701 So.2d at 851. In applying this standard, the trial court found that the victim was bound with her hands behind her back, gagged, and positioned on the bed face down. The trial court also found that the evidence and testimony demonstrated that the victim was still alive at the time Finney stabbed her. Finally, the trial court found that the victim lived for several minutes after Finney began stabbing her, ultimately drowning in her own blood.  Finney has not overcome by clear and convincing evidence the presumption of correctness accorded the trial court's factual findings.

Finney relies on the testimony by Dr. Diggs that the wounds were likely the "result of a frenzic type passion" (Dkt. 28, Ex. A3, Vol. III at Tr. 397-98) and his proffered testimony that even though the victim was gagged and tied, the scene was consistent with either consensual sexual bondage or the victim submitting to being bound and gagged out of fear (Dkt. 28, Ex. A4, Vol. IV at Tr.  456-66; 474; 476-77; 480-85), citing to the decisions in *Mitchell v. State*, 527 So.2d 179, 182 (Fla. 1988) (reversing the finding that the killing was cold, calculated, and premeditated, in light of medical examiner's testimony that the number of stab wounds (110) that were inflicted upon the victim with pocketknife and the force with which they were delivered was consistent with a killing consummated by one in a rage; a rage is inconsistent with the premeditated intent to kill someone) and *Hansborough v. State*, 509 So.2d 1081 (Fla. 1987) (finding that the record supports the finding of heinous, atrocious, or cruel where "the medical examiner identified several of the

victim's thirty-some stab wounds as defensive wounds, indicating she was aware of what was happening to her," and "testimony indicated that she did not die, or even necessarily lose consciousness instantly) for the proposition that a "[k]illing that occurs in a rage or frenzy is inconsistent with premeditation."

In *Lewis v. Jeffers*, 497 U.S. 764, 776 (1990), the Supreme Court stated that "in determining whether a state court's application of its constitutionally adequate aggravating circumstance was so erroneous as to raise an independent due process or Eighth Amendment violation, we think the more appropriate standard of review is the 'rational factfinder' standard established in *Jackson v. Virginia*, 443 U.S. 307 (1979)." The inquiry set forth in *Jackson* concerns "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319 (citation omitted). Applying the *Jackson* standard, and giving due deference to the trial court's unrebutted findings of fact, *see* 28 U.S.C. § 2254(e), the Court determines that a rational factfinder could have found that the killing was heinous, atrocious, or cruel.

Finney has again failed to overcome by clear and convincing evidence the presumption of correctness accorded the trial court's factual findings.  The state court's rejection of this claim is not contrary to any federal or constitutional law or an unreasonable application of any such law. Accordingly, this portion of Finney's claim is denied.

**GROUND TEN**

Finally, Finney argues that the jury instructions used during the 1992 sentencing unconstitutionally shifted the burden of proof from the State onto him in violation of the holdings in *Mullaney v. Wilbur*, 421 U.S. 684 (1975), and *In re Winship*, 397 U.S. 358 (1970). However, as Respondent points out, and Finney does not dispute, this claim was never exhausted in the state courts. This claim was not presented on direct appeal to the state supreme court from the 1992 death sentence, and when Finney presented this claim in a Rule 3.850 motion for post-conviction relief, the trial court stated clearly and unambiguously that it was procedurally barred (Dkt. 28, Ex. C2, Vol. 2 at PC-R. 7). Respondent contends that the claim was abandoned on appeal in the Rule 3.850 proceedings (Dkt. 28 at 83).  To the contrary, in affirming the trial court's decision, the Florida Supreme Court specifically held that this claim was procedurally barred.  *Finney v. State*, 831 So.2d at 657. Finney's undisputed failure to present this issue to the state supreme court on direct appeal means that it is unexhausted for purposes of federal habeas relief.

Where, as in the instant case, the state court itself correctly applies state law procedural rules to conclude a federal claim is barred, a petitioner may overcome a procedural bar only by demonstrating cause for his failure to exhaust state remedies and resulting prejudice. Because Finney has not shown cause and prejudice or manifest injustice to overcome the procedural default, *supra* n. 10, this claim is procedurally barred.

### Conclusion

For the foregoing reasons, the Court finds that Finney has failed to establish that he is entitled to federal habeas relief.

ACCORDINGLY, the Court **ORDERS** that:

1.   The Amended Petition for Writ of Habeas Corpus is **DENIED** (Dkt. 23).

2.   The **Clerk** shall enter judgment against Finney, terminate all pending motions, and close this case.

**DONE** and **ORDERED** in Tampa, Florida on July 5, 2006.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
All Parties/Counsel of Record

SA:jsh